1

2

3

4

5

6

7                UNITED STATES DISTRICT COURT

8               EASTERN DISTRICT OF CALIFORNIA

9

10  JERRY VALDIVIA, ALFRED YANCY,
    and HOSSIE WELCH, on their own
11  behalf and on behalf of the class
    of all persons similarly situated,
12                                        NO. CIV. S-94-671 LKK/GGH
            Plaintiffs,
13
        v.                                    O R D E R
14
    GRAY DAVIS, Governor of the State
15  of California, et al.,

16          Defendants.
    _____/
17

18      Plaintiffs, on behalf of themselves and a class of

19  California parolees, filed this action on May 2, 1994,

20  challenging the constitutionality of parole revocation

21  procedures by the California Board of Prison Terms ("BPT") and

22  the California Department of Corrections ("CDC").  This matter

23  is before the court on plaintiffs' motion for an order to show

24  cause why defendant Hickman should not be found in civil

25  contempt of the court's Permanent Injunction Order.  I decide

26  the motion based on the papers and pleadings filed herein and

                              1

1 | after oral argument.

2 | **I.**

3 | **PROCEDURAL BACKGROUND**

4 |     On June 13, 2002, plaintiffs were granted partial summary

5 | judgment on their claim that California's unitary parole

6 | revocation hearing system violated their due process rights

7 | under <u>Morrissey v. Brewer</u>, 408 U.S. 481 (1972) and <u>Gagnon v.</u>

8 | <u>Scarpelli</u>, 411 U.S. 778 (1973).  <u>See</u> <u>Valdivia v. Davis</u>, 206

9 | F.Supp.2d 1068 (E.D. Cal. 2002) ("June 13th Order").  The court

10 | held that California's parole revocation system violated the Due

11 | Process Clause of the Fourteenth Amendment by "allowing a delay

12 | of up to forty-five days or more before providing the parolee an

13 | opportunity to be heard regarding the reliability of the

14 | probable cause determination." <u>Id.</u> at 1078.

15 |     On October 18, 2002, the court ordered the defendants to

16 | file a proposed remedial plan addressing the violations

17 | identified in the June 13th Order.  On March 17, 2003, the

18 | defendants provided plaintiffs with their proposed Valdivia

19 | Remedial Plan ("VRP"), to which plaintiffs filed two objections.

20 | While the parties continued to engage in settlement negotiations

21 | over remaining claims not adjudged, defendants requested that

22 | the court provide guidance as to the sufficiency of their VRP.

23 | The court in response examined the VRP and ordered that

24 | defendants file a revised remedial plan to meet specific

25 | criteria.  <u>See</u> Order dated July 23, 2003.  On August 21, 2003,

26 | the defendants filed a revised VRP.  In November 2003, before a

1   final hearing on the revised VRP, the parties filed a Stipulated

2   Proposed Order for Permanent Injunctive Relief.  Pursuant to

3   their settlement negotiations, the proposed order required

4   California's BPT and the CDC to develop and implement new parole

5   revocation processes to remedy pervasive constitutional

6   violations in the State's then-existing procedures.  The revised

7   VRP was referenced in and attached to the proposed permanent

8   injunction order.  The parties sought preliminary approval from

9   the court that the settlement was sufficiently fair, reasonable

10  and adequate, and that it justified issuing notices to the class

11  and scheduling a final hearing.  See Fed. R. Civ. P. 23(e).  The

12  parties made their preliminary showing of fairness via a joint

13  Stipulated Motion for Preliminary Approval of Class Action

14  Settlement, filed on November 24, 2003.  On March 9, 2004, the

15  court granted the parties' permanent stipulated injunction and

16  granted final approval of that Stipulated Permanent Injunction

17  on March 17, 2004("Order").

18       The plaintiffs now allege that the defendants are in direct

19  violation of specific terms of the Permanent Injunction.

20                              **II.**

21                            **STANDARD**

22       A district court has continuing jurisdiction to enforce its

23  injunction.  Crawford v. Honig, 37 F.3d 485 (9th Cir. 1994).

24  The movant has the burden of proving by clear and convincing

25  evidence that the defendants are in violation of the court's

26  order.  Wolfard Glassblowing Co. v. Vanbragt, 118 F.3d 1320,

                                 3

1   1322 (9th Cir. 1997).  To be enforceable by contempt, the

2   injunction must clearly describe prohibited or required conduct.

3   <u>Gates v. Shinn</u>, 98 F.3d 463, 468 (9th Cir. 1996).  A defendant

4   should not be held in contempt for actions that "appear[] to be

5   based on a good faith and reasonable interpretation of the

6   court's order . . . ." <u>Vertex Distributing, Inc. v. Falcon Foam</u>

7   <u>Plastics, Inc</u>., 689 F.2d 885 (9th Cir. 1982).

8                                **III.**

9                              **ANALYSIS**

10      On April 11, 2005, defendant Roderick Hickman, Youth and

11  Adult Correctional Authority Secretary, issued a memorandum

12  ("Hickman Memo") to state parole agents with a directive

13  prohibiting the use of certain remedial sanctions in lieu of

14  probation revocation.  Decl. of Ernest Galvan ("Galvan Decl."),

15  Exh. 2.  The memorandum provides, in relevant part, that:

16  "Electronic In-Home Detention ("EID"), Community Correctional

17  Reentry Centers ("Halfway Back" Program) and the Substance Abuse

18  Treatment Control Units ("SATCU") were clearly designed to

19  provide intermediate sanctions in lieu of parole revocation

20  . . . . Effective immediately, these programs will no longer be

21  used."[1]

22      Plaintiffs contend that the change in policy and practice

23  as commanded by the Hickman Memo is in direct contravention of

24  _____

25      [1] SATCUs are residential facilities, often within prisons or
    jails, into which parolees can voluntarily accept detention for a
    period of up to 90 days in lieu of parole revocation.  <u>See</u> Cal.
26  Health & Safety Code §§ 11560, 11561, 11563.

                                    4

1  this court's Order.  The Permanent Injunction, they argue,

2  created procedures for, and ensured the use of, remedial

3  sanctions in place of parole revocation and imprisonment when

4  parole officers determine that such measures will best benefit

5  both the community and the parolee.  According to plaintiffs,

6  the Hickman Memo effectively obliterates the remedial sanctions

7  provisions.  In response, the defendants acknowledge that a

8  remedial sanctions plan is contained in the VRP.  They argue,

9  however, that the court may not find them in violation of the

10 Permanent Injunction because remedial sanctions are not part of

11 that Order.  I examine the parties' contentions below.

12 **A.    PLAIN READING OF THE PERMANENT INJUNCTION**

13      The court must first determine whether the language of the

14 Permanent Injunction Order incorporates remedial sanctions as

15 contended by plaintiffs.

16      As a general matter, principles of state law govern the

17 interpretation and enforcement of settlement agreements.  <u>Jeff</u>

18 <u>D. v. Andrus</u>, 899 F.2d 753, 759 (9th Cir. 1989); <u>see also</u> <u>Gates</u>

19 <u>v. Rowland</u>, 39 F.3d 1439, 1444 (9th Cir. 1994) ("The rules of

20 contract interpretation of the situs state govern interpretation

21 of the consent decree.").  "This is true even when the

22 underlying cause of action is federal in nature." <u>United</u>

23 <u>Commercial Ins. v. Paymaster Corp.</u>, 962 F.2d 853, 856 (9th Cir.

24 1992).

25      California law dictates that "[t]he language of a contract

26 is to govern its interpretation[] if the language is clear and

1  explicit . . . ."  Cal. Civ. Code § 1638.  The intention of

2  parties must therefore be gathered from the plain language on

3  the face of contract.  <u>Pacific States Corp. v. Hall</u>, 166 F.2d 668

4  (9th Cir. 1948).

5      Section IV of the permanent injunction, entitled "Policies,

6  Procedures, Forms, and Plans," sets forth the prospective and

7  mandatory requirements for defendants.  Paragraph 11(a) directs

8  the defendants to "develop and implement sufficiently specific

9  Policies and Procedures" to ensure compliance with "all of the

10 requirements of [the permanent injunction] Order."  It specifies

11 that "[t]he Policies and Procedures will provide for

12 implementation of the August 21, 2003 Remedial Outline (attached

13 hereto as Exhibit A), as well as the requirements set forth

14 below in Paragraphs 12-24."  PI Order, ¶11(a).  As indicated by

15 the language, the VRP is indeed attached to the order.

16 Accordingly, the plain language of the Permanent Injunction

17 clearly and explicitly incorporates the VRP and orders the

18 defendants to comply with and implement it.[2]  Defendants are

19 therefore bound by the terms of the VRP.

20 ////

21

22      [2]  Paragraph 12 reiterates that the Policies and Procedures
   shall ensure that, in addition to the Remedial Plan Outline, the
23 requirements set forth in paragraphs 13-24 are met.  The
   requirements in those paragraphs concern the parolee's appointed
24 counsel's ability to adequately represent the parolee,
   confidentiality of parolee's files, transparency and communication
25 between the involved parties during the parole revocation process,
   and evidence used at the probable cause and final revocation
26 hearings.

6

**B.   THE FOUR CORNERS RULE**

Despite the plain language of the permanent injunction incorporating and directing compliance with the VRP, defendants insist that, because remedial sanctions "are not mentioned in the body of the injunction" itself, they cannot be a part of the Order under the "four corners" rule. Def's Opp. Br. at 5. Defendants' understanding of the four corners rule is mistaken. It is well-established that reliance upon references or documents expressly incorporated in a settlement agreement for construction purposes "does not in any way depart from the 'four corners' rule." United States v. ITT Continental Baking Co., 420 U.S. 223, 238 (1975)(construing agreement containing consent order and attached appendix as three "parts of the same agreement" under "four corners" rule).  Rather, the terms contained in a document attached to an injunction bind the parties just as much as the terms contained in the injunction itself.  See California v. Campbell, 138 F.3d 772, 783 (9th Cir. 1998) (holding that enjoined defendants bound by terms of document attached to injunction); see also Davis v. City and County of San Francisco, 890 F.2d 1438, 1450 (9th Cir. 1989).

Further, although Rule 65(d) of the Federal Rules of Civil Procedure provides that every order granting an injunction "shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained . . .," the rule does not necessarily preclude incorporation by reference.  State of Cal., on Behalf of

7

1 <u>California Dept. of Toxic Substances</u>, 138 F.3d 772 (9th Cir.

2 1998).

3      The Ninth Circuit has explained that "the rationale behind

4 the incorporation-by-reference language in Rule 65(d) [i]s a

5 safeguard to 'ensure adequate notice to defendants of the acts

6 prohibited.'" <u>Id.</u> at 783 (quoting <u>Henry Hope X-Ray Prods., Inc.</u>

7 <u>v. Marron Carrel, Inc.</u>, 674 F.2d 1336, 1343 (9th Cir. 1982)).

8 Here, it cannot be said that the defendants were unaware of the

9 incorporation and contents of the VRP, since the Stipulated

10 Order for Permanent Injunction, including the VRP, were

11 submitted by the parties themselves pursuant to their settlement

12 negotiations.[3]  The Order's reference to and attachment of the

13 VRP therefore conforms with the "four corners rule" as well as

14 with Rule 65(d).

15 **C.    THE VRP AND REMEDIAL SANCTIONS**

16      As contended by the plaintiffs, a review of the VRP

17 demonstrates that remedial sanctions are included at nearly

18 every step of the new revocation process created by the parties

19 pursuant to their settlement negotiations.  The VRP is a six-

20 _____

21     [3] Other evidence unambiguously demonstrates the defendants'
own understanding that remedial sanctions are part of the Permanent

22 Injunction.  The defendants posted class member notices, approved
by the court, in every jail, prison and parole office in

23 California.  The short notice explicitly states that, "[u]nder the
agreement, by early 2004, some parolees will be sent to community-

24 based programs, instead of prison."  Galvan Decl., Exh. 8,
attachments.  The longer notice provides that "the Permanent

25 Injunction will require many changes in the revocation system,"
including that "the BPT and CDC will use alternatives to parole

26 revocation, such as treatment in the community, for some parolees
who would otherwise be arrested on parole violation charges." <u>Id.</u>

1   page document along with a flow chart.  The second section of

2   the VRP, entitled "Remedial Sanctions," provides that, "as part

3   of the overall reform of the revocation process, the Parole and

4   Community Services Division of the Department of Corrections

5   will begin using remedial sanctions/community based treatment

6   . . . ." VRP at 1.  It explains that "some of the remedial

7   sanctions/community based treatment programs that will be used

8   are the Substance Abuse Treatment Control Units, Electronic

9   Monitoring, Self-Help Outpatient/aftercare programs, and

10  alternative placement in structured and supervised

11  environments." Id.  Emphasized in bold and capital letters, the

12  VRP provides that if, shortly after the alleged parole violation

13  occurs, "remedial sanctions are deemed inappropriate and a

14  parole hold is placed on the parolee, a probable cause

15  determination/review will take place . . . ."  According to the

16  VRP, officials will then again consider remedial sanctions

17  during the probable cause determination.  That procedure was

18  apparently put into place "in an attempt to take a second look

19  at those individuals who have been placed into custody to

20  determine if the 'present danger to public safety' concern still

21  exists or if remedial sanctions/community based treatment is

22  possible at th[at] juncture." Id. at 2.  If remedial sanctions

23  are deemed inappropriate, the parolee is given notice of charges

24  and a probable cause hearing shall be conducted within ten

25  business days of when the notice is provided.  The VRP explains

26  that remedial sanctions/community based treatment must again be

9

1  considered twice before the probable cause hearing. VRP at 3,

2  4.[4]  Finally, the "Deputy Commissioner/Parole Administrator

3  shall have the complete range of options to resolve the case,"

4  including "remedial sanctions/community based treatment." Id. at

5  5.

6       Accordingly, pursuant to its mandatory language, the

7  permanent injunction requires that defendants (1) consider

8  remedial sanctions throughout the new parole revocation process,

9  and that the remedial sanctions include (2) "the Substance Abuse

10 Treatment Control Units, Electronic Monitoring, Self-Help

11 Outpatient/aftercare programs, and alternative placement in

12 structured and supervised environments." VRP at 1.

13 **D.   PERMANENT INJUNCTION VIOLATIONS**

14      Having concluded that the permanent injunction clearly

15 requires the remedial sanctions procedures as set forth in the

16 VRP, I now examine whether the directives in the Hickman Memo

17 violate the court's Order.

18      The Hickman Memo creates a new policy and practice which

19 prohibit the consideration and use of Electronic In-Home

20 Detention ("EHM"), Substance Abuse Treatment Control Units, and

21 ───────────────

22      [4]  Specifically, the VRP states that "On or before the fourth
   business day, the Unit Supervisor must review the report and

23 . . . consider whether or not remedial sanctions/community based
   treatment is appropriate in lieu of proceeding with referral to the

24 Board of Prison Terms with a recommendation that the parolee be
   returned to prison." Id. at 3.  "The revocation packet is reviewed
   by the Parole Administrator [on or before the 4th business day] to

25 determine whether or not there is a sufficient basis for the case
   to move forward and whether or not remedial sanctions/community

26 based treatment is appropriate at this juncture." Id. at 4.

1  Community Correctional Reentry Centers ("CCRCs") as sanctions in

2  lieu of parole revocation.  The prohibition of the use of the

3  first two remedial sanctions offends the Permanent Injunction's

4  mandate that SATCUs and Electronic Monitoring be considered and

5  used when appropriate.  The Order provides that these two

6  programs "*will* be used," VRP at 1(emphasis added).  Defendants

7  respond that any conflict between the memorandum and the

8  permanent injunction is inconsequential because they will

9  "retool" these programs and may offer them to parolees upon

10 their release from prison, even before a parole violation

11 occurs.  Def's Oppo. at 9.  Although such a policy is laudable,

12 it is no substitute for that required by the permanent

13 injunction.  The VRP explicitly states that the SATCUs and

14 Electronic Monitoring "will" be used in the manner described

15 therein, thus indicating a requirement or command and

16 eliminating any choice or discretion as to the matter.

17 Therefore, these programs must be made available and be

18 considered throughout the parole revocation process *after* a

19 parole violation occurs.[5]

20 _____

21      [5]  Defendants also assert that the Hickman Memorandum "did not
        supercede the Board of Prison Term's authority under California
22      Code of Regulations, Title 15, sections 2513, 2645 and 2646."
        Defs' Oppo. at 9.  According to them, the BPT retains the
23      discretion to place a parolee in a community program rather than
        revoke probation.  This argument has no merit for two reasons.
24      One, the issue here is not whether the Hickman Memo violates state
        law, but whether it violates the Permanent Injunction.  Second, as
25      plaintiff point out, those sections do not require consideration
        of the remedial sanctions listed in the Permanent Injunction
26      throughout the revocation process.

1    Whether the restriction on the use of Community

2  Correctional Reentry Centers also violates the Permanent

3  Injunction is a closer question.  The VRP mandates the

4  consideration of "Self-Help Outpatient/aftercare programs" and

5  "alternative placement in structured and supervised

6  environments."  Unlike the SATCU and EHD, these other remedial

7  sanctions describe types of programs, rather than specific

8  programs.  Community Correctional Reentry Centers are formal,

9  controlled environments for residential drug treatment, Cal.

10 Penal Code §§ 6250.5(b), 6251, 6253(a),(b), 6258(b), and

11 therefore comport with the requirement for "placement in

12 structured and supervised environments."  However, the Order

13 contemplates that other programs that qualify as structured and

14 supervised environments may also be employed.  It appears, then,

15 that the prohibition of the use of CCRCs does not violate the

16 court's Order as long as the defendants offer other remedial

17 sanctions that are "Self-Help Outpatient/aftercare programs" and

18 "alternative placement in structured and supervised

19 environments."  If they do not, then the removal of CCRCs as

20 available remedial sanctions would result in no "Self-Help

21 Outpatient/aftercare programs" or "alternative placement in

22 structured and supervised environments."[6]  The defendants argue

23 _____

24    [6]  Plaintiffs assert that the CCRCs were the "alternative
   placement in structured and supervised environments" included in
   defendants' policies and procedures filed to implement the
25 Permanent Injunction.  Pls' Reply at 2.  The language of the
   Policies and Procedures does not support plaintiffs' assertion,
26 however.  The language there states only that "[r]emedial sanctions

12

1   that they continue to provide remedial sanctions under these two

2   categories of remedial sanctions.  According to defendants, they

3   will continue to utilize community based programs in the

4   disposition of parole violations when public safety is not

5   endangered.  The issue then is whether any of those programs are

6   suitable under the "Self-Help Outpatient/aftercare programs" or

7   "alternative placement in structured and supervised

8   environments" categories.

9       Defendants first explain that they will use the "Substance

10  Abuse Recovery and Treatment Program" (STAR) which is "an

11  instructional-based education program designed to teach parolees

12  how to address and prevent substance abuse."  Defs' Oppo. at 8.

13  Plaintiffs object that the STAR program is not a residential

14  alternative, but is rather a classroom-based educational program

15  run out of local parole offices.  Pls' Reply at 13.  Apparently,

16  plaintiffs believe that, because the CCRCs are residential drug

17  treatment programs, any replacement program must also be

18  residential.  That position is not grounded on any authority,

19  however.[7]  In their briefs, plaintiffs also object to the

20  defendants' assertion that they will continue to use programs

21  such as "Proposition 36" community treatment centers, Community

22

23  may include but are not limited to" a "Half-way Back Program"
    (CCRCs).  Galvan Decl., Exh. 5 (Policies & Procedures) at 3.
24

        [7]  The only terms in the Permanent Injunction relating to a
25  residential program relate to the requirement that SATCUs, which
    are residential facilities, be available and considered as remedial
26  sanctions.

                                    13

1  based drug and alcohol rehabilitation centers, Parole Services

2  Network (PSN), Parolee Partnership Program, Narcotics Anonymous,

3  and Alcoholics Anonymous.

4       At oral argument, the plaintiffs conceded that there are

5  no standard definitions for the terms "Self-Help

6  Outpatient/aftercare programs" and "alternative placement in

7  structured and supervised environments" to guide the court in

8  determining whether defendants' new programs are suitable under

9  these two categories.  More importantly, the plaintiffs also

10 conceded that the use of this broad language vests the

11 defendants with discretion in selecting the programs under these

12 two categories.  The plaintiffs do not provide the court with

13 any information about the substitute programs upon which it can

14 find that these programs are inadequate under the Permanent

15 Injunction.  Further, because this court must "accord deference

16 to the appropriate prison authorities," Turner v. Safley, 482

17 U.S. 78, 85 (1987), in their exercise of discretion regarding

18 what types of programs meet the requirements of these two

19 categories, the court will not find defendants in violation of

20 the Permanent Injunction by virtue of the elimination of CCRCs.[8]

21 ───────────────────

22      [8]  The plaintiffs object to the defendants' purported use of
   "Substance Abuse Coordination Agencies" (SACAs) as remedial
23 sanctions on the grounds that those programs offer services to
   parolees "graduating from prison substance abuse programs" and are
   therefore not available to parole violators.  Decl. Of Holly
24 Baldwin in Supp. of Pls' Reply, Exh. B at 21.  Defendants do not
   argue to the contrary.  The defendants are admonished that, if it
25 is true that SACAs are not available for parole violators, then
   they do not qualify as remedial sanctions under the Permanent
26 Injunction.

14

1   As explained above, while removal of the CCRCs does not

2   violate the Permanent Injunction, removal of Electronic

3   Monitoring and SATCUs as available remedial sanctions as

4   explained in the VRP is violative of that Order.  The court,

5   however, does not believe that a contempt order is warranted at

6   this time.  There is nothing before the court indicating that

7   the Hickman Memo was issued in bad faith, rather, the

8   defendants' interpretation of the Permanent Injunction, although

9   erroneous, was arguably reasonable.  Further, it appears that

10  the defendants have substantially complied with the court's

11  Order.  <u>Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.</u>,

12  689 F.2d 885 (9th Cir. 1982)(explaining that substantial

13  compliance with the terms of a consent judgment is a valid

14  defense to and basis upon which to find against civil contempt).

15                             **IV.**

16                          **CONCLUSION**

17      Plaintiff's motion is GRANTED in part and DENIED in part as

18  follows:

19      1.   The defendants are in violation of the Permanent

20  Injunction Order by virtue of the elimination of the remedial

21  sanctions of Electronic Monitoring and SATCUs;

22      2.   The removal of the CCRCs is not in violation of

23  the Permanent Injunction Order; and

24  ////

25  ////

26  ////

1       3.   Defendants will not be held in contempt.

2       IT IS SO ORDERED.

3       DATED:   June 8, 2005.
                                    /s/Lawrence K. Karlton
4                                   LAWRENCE K. KARLTON
                                    SENIOR JUDGE
5                                   UNITED STATES DISTRICT COURT

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                16