BINGHAM, McCUTCHEN LLP
KAREN KENNARD – 141925
KRISTEN A. PALUMBO – 215857
Three Embarcadero Center
San Francisco, California 94111-4067
Telephone: (415) 393-2000

PRISON LAW OFFICE
DONALD SPECTER – 83925
General Delivery
San Quentin, California 94964
Telephone: (415) 457-9144

ROSEN, BIEN & GALVAN, LLP
MICHAEL W. BIEN – 096891
HOLLY M. BALDWIN – 191317
ERNEST GALVAN – 196065
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone (415) 433-6830

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY VALDIVIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ARNOLD SCHWARZENEGGER, et al., <br><br> Defendants. | No. Civ. S-94-0671 LKK/GGH <br><br> STIPULATION AND ORDER REGARDING REMEDIAL SANCTIONS |

**STIPULATION AND ORDER REGARDING REMEDIAL SANCTIONS,** No. Civ. S-94-0671 LKK/GGH

PDF created with pdfFactory trial version www.pdffactory.com

THE PARTIES, THROUGH THEIR RESPECTIVE COUNSEL, HEREBY STIPULATE AS FOLLOWS:

WHEREAS:

1. On March 9, 2004, after notice to the class, receipt of objections, and a fairness hearing, the Court approved a Stipulation for Permanent Injunctive Relief in this matter (the "*Valdivia* Permanent Injunction"), requiring among other things that "as part of the overall reform of the revocation process, the Parole and Community Services Division of the Department of Corrections will begin using remedial sanctions/community based treatment," including "the Substance Abuse Treatment Control Units, Electronic Monitoring, Self-Help Outpatient/aftercare programs, and alternative placement in structured and supervised environments." *Valdivia* Permanent Injunction, Exhibit A at 1. Defendants set forth a specific goal for remedial sanctions, "to reduce the number of returns to prison for violations of parole by up to 10% in 2004 and by up to 30% by 2006." *Id.* at 2.

2. On June 8, 2005, after notice and a hearing, the Court ruled that "the permanent injunction requires that defendants (1) consider remedial sanctions throughout the new parole revocation process, and that the remedial sanctions include (2) 'the Substance Abuse Treatment Control Units, Electronic Monitoring, Self-Help Outpatient/aftercare programs, and alternative placement in structured and supervised environments.'"  (June 8, 2005 Order at 10:7-12.)  The Court held that the *Valdivia* Permanent Injunction's "reference to and attachment of the VRP [or *Valdivia* Remedial Plan at Exhibit A]… conforms with the 'four corners rule' as well as Rule 65(d)" and found that Defendants "were in violation of the Permanent Injunction Order by virtue of the elimination of the remedial sanctions of Electronic Monitoring and SATCU."  (June 8, 2005 Order at 8:12-14; 15:19-21.)

3. Defendants have stated their intention to replace SATCU with In-Custody Drug Treatment Programs ("ICDTP") and Electronic Monitoring with Electronic In-Home Detention ("EID"). Whether and to what extent these new programs are appropriate

substitutes, and are being implemented in a manner that substantially replaces what was lost when SATCU and Electronic Monitoring were eliminated has not been determined.

4. On July 4, 2006, the Special Master directed Defendants to "prepare a new remedial sanctions plan, to be presented to the Special Master and the Plaintiffs' attorneys no later than November 30, 2006." Specifically, the Special Master stated that "the plan should include any changes in programs, policies or courses of action that meet the spirit and projected numbers of the original remedial sanctions plan," and that "the plan must include specific details concerning the programs to be offered; the populations for which they are designed; the logistics required to design, fund and contract for, and oversee the programs, including training of BPH and DAPO staff in using them; and anticipated timelines for each of those steps."

5. The parties disagree as to the scope of Defendants' obligations pursuant to the Court's June 8, 2005 Order and the *Valdivia* Permanent Injunction, and reserve all rights to resolve this disagreement either with the assistance of the Special Master dispute resolution process or through litigation. The parties agree, however, that certain steps must be taken immediately to ensure timely compliance with the remedial sanctions provisions of the *Valdivia* Permanent Injunction. Defendants contend that the steps recited herein may bring them into substantial compliance with the June 8, 2005 Order. Plaintiffs disagree, and in any event, believe that full compliance with the Permanent Injunction is the important target.

6. The parties have been meeting and continue to meet regularly with the Special Master concerning remedial sanctions. The Special Master joins in the parties' request that the Court enter this Order, in furtherance of the remedial process.

THEREFORE, IT IS HEREBY ORDERED THAT:

I. In Custody Drug Treatment Program (ICDTP)

A. Defendants have stated that their goal is to establish 1800 ICDTP beds. Plaintiffs have not agreed that there is any evidence that 1800 ICDTP beds is the appropriate number to ensure that ICDTP is made reasonably available at all stages of the

PDF created with pdfFactory trial version www.pdffactory.com

parole revocation process.  Defendants represent that approximately 288 ICDTP beds are currently operating as of March 16, 2007.  Defendants shall make every effort to make 1800 ICDTP beds available for use as remedial sanctions no later than April 1, 2008.  In the interim, Defendants shall take the following steps:

    B.    Defendants shall make every effort to have 150 ICDTP beds operational and available for use as remedial sanctions for parole violators in Los Angeles County no later than August 1, 2007, including at least 30 ICDTP beds designated for female parolees.

    C.    Defendants shall make every effort to have 90 new ICDTP beds operational and available for use as remedial sanctions in Orange County no later than November 1, 2007, including at least 30 ICDTP beds designated for female parolees.

    D.    In addition to the 528 ICDTP beds discussed above (288 existing plus 150 in Los Angeles County plus 90 in Orange County), Defendants shall take all steps necessary to ensure that they reach 1800 beds by April 1, 2008 in a phased manner.  Defendants shall phase in the remaining 1272 beds with the following targets: by November 1, 2007, 424 additional beds anywhere in the state; by January 1, 2008, 200 additional beds anywhere in the state; by February 15, 2008, 200 additional beds anywhere in the state; and the balance of 448 beds by April 1, 2008.  With the addition of these beds, by April 1, 2008, there shall be no fewer than 400 ICDTP beds per Region, and no fewer than 40 ICDTP beds designated for female parolees in each Region.  Defendants represent that they are making and will continue to make special efforts to secure ICDTP beds in underserved areas of Region IV.

    E.    The figures in this section are not intended to establish any set ratios of male to female beds.

    F.    Defendants shall periodically report to the Special Master and Plaintiffs' counsel on their efforts to secure the ICDTP beds described herein with the first report due June 1, 2007, and with reports as needed thereafter, and at least every 60 days.

II.   Electronic In Home Detention (EID)

By May 1, 2007, Defendants shall have 500 EID units operational, with 250 of

these units dedicated to use as remedial sanctions, and the remaining 250 available for use either in parole supervision or remedial sanctions. CDCR will provide the minimal level of telephone service required for EID as described in DAPO policy no. 07-06 at the discretion of CDCR.

III. Interim Use of Residential Multi-Service Center (RMSC), Female Residential Multi-Service Center (FRMSC), and Parolee Service Center (PSC)

    A. While Defendants are building their ICDTP capacity leading up to 1800 beds by April 1, 2008, Defendants shall make existing and proposed RMSC, FRMSC and PSC beds available for use as remedial sanctions in the manner set forth below.

    B. Beginning immediately, and during the above-described phase-in period for ICDTP, Defendants small make one-half (1/2) of all RMSC, FMRSC and PSC beds available as remedial sanctions.

    C. Defendants represent that they are making and will continue to make special efforts to secure RMSC, FRMSC and PSC resources in the underserved areas of Region IV.

    D. The parties shall meet and confer, on or before April 30, 2008, as to whether and to what extent, the RMSC, FRMSC and PSC programs shall remain available as remedial sanctions.

    E. The intent of this section is not to give RMSC, FRMSC, and PSC the same status under the *Valdivia* Permanent Injunction that ICDTP and EID may have.

IV. Distribution of Policy and Procedure Information

    A. Defendants shall undertake to announce, publicize and train the management and staff of DAPO and BPH regarding the availability of ICDTP, RMSC, FRMSC, and PSC beds, as well as EID units for use as remedial sanctions in two phases: an immediate interim phase, and a long-term phase.

        1. <u>Interim Memorandum to Field</u>. By March 30, 2007, Defendants shall provide Plaintiffs' counsel and the Special Master with a draft interim communication to the

field regarding the availability of ICDTP, RMSC, FRMSC, and PSC beds and EID Units for use as remedial sanctions, including all information that Defendants believe is necessary to facilitate immediate use of these programs as remedial sanctions, including but not limited to a statement the above-listed programs are available as remedial sanctions, attachment of existing policy and procedure documents regarding their use, existing inclusionary and exclusionary criteria, and lists of the program names, contact information and numbers of beds.  The interim memorandum shall also include information regarding other readily identifiable existing programs that are available as remedial sanctions, and a statement as to what populations they are available for, including but not limited to the Department of Addiction Recovery Services SASCA aftercare programs for qualified parolees, the Community Based Coalition (CBC) program in Los Angeles County, and DAPO Day Reporting Centers.  The Interim Memorandum to Field shall also include appropriate preliminary information on inter-county transfers, as discussed at Section VI.A, below. Plaintiffs' counsel shall respond to this document no later than April 3, 2007, and Defendants shall distribute it to the field and to the parolee defense panel as soon as possible thereafter.

    2. <u>Long-Term Memorandum to Field.</u>  Defendants have represented that they intend to undertake revisions to ICDTP, EID, RMSC, and PSC policies and procedures to facilitate their use as remedial sanctions, including but not limited to reviewing and reconsidering exclusionary criteria to make the programs more widely available. (Defendants represent that FRMSC policies and procedures have not yet been written, and will be written to comport with the principles stated here.)  By May 1, 2007, Defendants shall provide Plaintiffs' counsel and the Special Master with a draft long-term memorandum to the field regarding the availability of ICDTP, RMSC, and PSC beds, as well as EID Units, for use as remedial sanctions.  The long-term memorandum shall also include information regarding other readily identifiable existing programs that are available as remedial sanctions, and a statement as to what populations they are available for, including but not limited to the Department of Addiction Recovery Services SASCA aftercare

PDF created with pdfFactory trial version www.pdffactory.com

1 programs for qualified parolees, the Community Based Coalition (CBC) program in Los
2 Angeles County, and DAPO Day Reporting Centers.  The Long-Term Memorandum to
3 Field shall also include information on inter-county transfers, as discussed at Section VI.A,
4 below.  Plaintiffs' counsel shall respond to this document no later than May 15, 2007.  The
5 parties shall meet and confer on May 31, 2007 regarding the Long-Term Memorandum.
6 Defendants shall make all reasonable efforts to distribute it to the field and to the parolee
7 defense panel no later than July 2, 2007.

8      B.     Defendants shall also develop, after consultation with Plaintiffs' counsel and
9 the Special Master, no later than August 15, 2007, an implementation and training plan to
10 assure that remedial sanctions are reasonably considered at each stage of the parole
11 revocation process, and are appropriately and fairly available to parolees.

12      C.     Defendants agree to evaluate remedial sanctions programs.  The inclusion of
13 this requirement is not a concession by Defendants that evaluations or their criteria are
14 within the scope of the *Valdivia* Permanent Injunction.

15

16 V.  Graduated Sanctions/Parole Violation Matrix
17      Defendants have represented that they are investigating the development and use of
18 a decision-making matrix to provide DAPO and BPH decision-makers with CDCR
19 supported and community-based alternatives to incarceration for response to violations of
20 parole.  Defendants shall report to the Special Master and Plaintiffs on the progress and
21 results of this investigation no later than July 1, 2007, and periodically thereafter as
22 necessary, but at least every 60 days until completion of the matrix investigations or
23 resulting matrix implementation.
24

25 VI.  Fair Consideration/Equal Access
26      A.     County to County Transfer Policy
27      The interim and long-term memoranda described above at Section IV.A shall include
28 appropriate statements of the remedial sanctions county-to-county transfer policy. The

PDF created with pdfFactory trial version www.pdffactory.com

Memoranda shall explain that temporary placement of out-of-county parolees in remedial sanctions is not restricted by the 5% limitation on out-of-county transfers. The Memoranda shall expressly state that an otherwise eligible parolee shall not be excluded from a remedial sanctions program based solely on the unavailability of that program in his or her county of residence or Parole Region. The interim and long-term memoranda shall direct decision-makers to inquire about the availability of an appropriate program anywhere in the state and provide directions for ascertaining availability of a placement and effecting an out-of-county placement. The appropriateness of a county to county transfer is within the sole discretion of the CDCR.

B.  Parolees with Mental Disabilities

In establishing the 1800 ICDTP beds referred to above in Section I.A, above, Defendants shall make every effort to secure 20 beds in each region targeting the needs of parolees with dual diagnoses of mental illness and substance abuse. These efforts shall be documented in the periodic reports described above at Section I.F.

VII. Unresolved Subjects

Among the remedial sanctions subjects that are as yet unresolved, the parties agree to engage in further negotiations on the following topics and to file a Status Report with the Special Master on said negotiations by September 1, 2007. Among the remaining disputes are whether and to what degree the issues below are within the scope of this case.

A.  Alternative Placement in Structured and Supervised Environments: Clarification regarding Defendants' currently funded, currently operating, and proposed CDCR and community-based residential programs available to DAPO and BPH staff for use as remedial sanctions.

B.  Self-Help Outpatient/Aftercare Programs: Clarification regarding Defendants' currently funded, currently operating, and proposed CDCR and community-based Self-Help Outpatient/Aftercare Programs available to DAPO and BPH staff for use as remedial sanctions.

PDF created with pdfFactory trial version www.pdffactory.com

  C. Parolees with Disabilities: Defendants' plan to provide remedial sanctions to parolees with disabilities that are the same or equivalent to remedial sanctions available to parolees without disabilities, including the removal of any and all blanket exclusions of parolees from remedial sanctions based on disabilities or past or present participation in the Disability Placement Program, Developmental Disability Program, or mental health case load.

  D. Female Parolees: Defendants' plan to provide remedial sanctions to female parolees that are the same or equivalent to remedial sanctions available to male parolees, including the availability of PSAP or programs providing equivalent benefits to female parolees.

  E. Implementation, Training, and Supervision: Defendants' plan, including timeline, for updating policies and procedures regarding remedial sanctions, conducting remedial sanctions training for DAPO and BPH decision-makers, and the development of a system by which every DAPO and BPH decision maker is able to determine the availability of remedial sanctions statewide on any given day.

  F. Compliance Measurement: Defendants' plan, including timeline, for the modification of information systems, including RSTS and CalParole, to track the consideration of remedial sanctions at each stage of the parole revocation process.

  G. Parolee Defense Counsel: Defendants' plan to provide to parolee defense counsel all policies and procedures circulated to DAPO and BPH decision-makers regarding the availability of remedial sanctions statewide , including the eligibility and exclusionary criteria for each program.

  H. Remedial Sanctions Programs to Address the Needs of Parolees with Severe Mental Illness:  The parties have discussed and continue to discuss the problems of parolees with severe mental illness whose violations are linked to their mental illness or unmet mental health needs.  Plaintiffs' position is that in order to be successful and meaningfully available, the remedial sanctions program must include some programs specifically directed at parolees with current functional impairments at levels comparable to those required at

PDF created with pdfFactory trial version www.pdffactory.com

1 | Enhanced Outpatient Program, Mental Health Crisis Bed, and Department of Mental Health
2 | Levels of Care in CDCR Adult Institutions.
3 |
4 |   This Stipulated Order shall be binding on the parties as of the date it is fully
5 | executed by them, regardless of whether it has been entered by the Court as of that time.
6 | The provisions of this Order shall remain in full force and effect until further order of this
7 | Court.
8 | IT IS SO STIPULATED.
9 |
10 | Dated: April 2, 2007        ROSEN, BIEN & GALVAN, LLP
11 |                   By  */s/ Michael W. Bien*
12 |                      Michael W. Bien
                     Attorneys for Plaintiffs
13 |
14 | Dated: April 2, 2007        OFFICE of the ATTORNEY GENERAL
                     of the STATE OF CALIFORNIA
15 |
16 |                   By  */s/ Katherine Nelson*
                     Katherine Nelson
17 |                      Deputy Attorney General
18 |                      Attorneys for Defendants
19 |
20 | The Special Master has reviewed this Stipulation and adopts its terms as a Recommendation
21 | to the Court.
22 | Dated: April 2, 2007         By  /s/ Chase Riveland
23 |                      CHASE RIVELAND
24 |                      Special Master
25 |
26 | IT IS SO ORDERED.
27 | Dated: April 3, 2007                     
                   LAWRENCE K. KARLTON
28 |                    SENIOR JUDGE
                   UNITED STATES DISTRICT COURT

**STIPULATION AND ORDER REGARDING REMEDIAL SANCTIONS**, No. Civ. S-94-0671 LKK/GGH     9

PDF created with pdfFactory trial version www.pdffactory.com