UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JERRY VALDIVIA, ALFRED YANCY,
and HOSSIE WELCH, on their own
behalf and on behalf of the class
of all persons similarly situated,

        NO. CIV. S-94-671 LKK/GGH

    Plaintiffs,

  v.                        O R D E R

ARNOLD SCHWARZENEGGER, Governor of
the State of California, et al.,

    Defendants.
                                       /

Plaintiffs bring a motion for an order finding defendants in violation of the Stipulated Order of Permanent Injunction entered in 2003. Specifically, plaintiff argues that the defendants have violated the terms of the injunction by failing to adhere to it when revoking the parole of Civil Addicts Parolees.[1] For the reasons provided herein, the court denies the motion.

---

[1] In the same motion, the plaintiffs also sought an order finding defendants in violation of the permanent injunction with regard to Cooperative Parolees. The court disposed of that part of plaintiffs' motion in a September 28, 2007 order.

1

## I. BACKGROUND AND FACTS

The court described the background of this suit in its September 28, 2007 order. In the present motion, the plaintiffs argue that the defendants have violated the permanent injunction by failing to abide by its terms in the revocation of the parole of those parolees in the Civil Addict Program, Cal. Welf. & Inst. Code § 3000 et seq.

## II.
## STANDARD FOR MOTION FOR ORDER FINDING DEFENDANTS' IN VIOLATION OF A PERMANENT INJUNCTION

When interpreting the parameters of a class, a district court should be guided by the plain language of the class definition. In re. Cement and Concrete Antitrust Litigation, 817 F.2d 1435, 1442-43 (9th Cir. 1987). In other words, the court's approach is the same that it would use when construing the language of a statute or contract. Id. at 1443. The court's interpretation also should be informed by apparent purpose of class certification and the common questions among the class members' claims. Id.

## III. ANALYSIS

Plaintiffs argue that Civil Addict Parolees are included in the certified plaintiff class and therefore that the terms of this court's order in 2002 and the terms of the 2003 permanent injunction apply to this group. Because defendants have not abided by the terms of the permanent injunction with respect to these parolees, plaintiffs argue that defendants are in violation of it. As explained below, the court cannot agree with

the plaintiffs' postion.

**A.  California Statutory Scheme Governing Civil Addicts**

If a defendant has been convicted of a crime and the judge believes that the defendant may be addicted to narcotics or may be in imminent danger of becoming addicted to narcotics, the judge may commit the defendant to the California Rehabilitation Center for treatment. Cal. Welf & Inst. Code §§ 3050, 3051. The purpose of this commitment is nonpunitive. Instead, the legislature has sought to successfully treat addiction for the sake of the addict's own safety and the well-being of the public. Id. § 3000. Upon commitment to the inpatient treatment program, the judge suspends the defendant's felony sentence or, where the defendant has been convicted of a misdemeanor or an infraction, may suspend the defendant's sentence or adjourn the proceedings. Id. §§ 3050, 3051.

A person who has not been convicted of a crime may be committed to the Department of Corrections and Rehabilitation if the superior court finds that the person may be addicted or may be in imminent danger of becoming addicted to narcotics. Cal. Welf. & Inst. Code §§ 3100, 3104, 3106, 3106.5.

**1.  Process By Which Civil Addicts Are Released As Outpatients**

It appears from the statutes that there are two routes by which a person committed to inpatient treatment[2] may be released

---

[2] For ease, the court uses the term "civil addicts" to refer to those individuals convicted of an infraction, misdemeanor, or

3

to outpatient status. First, section 3151 of the Welfare and Institutions Code appears to give the Board of Parole Hearings discretion to release someone to outpatient status when his personal progress seems to warrant it. Second, section 3201 of the Welfare and Institutions Code appears to mandate that if a civil addict has spent a period of time in custody that equals the amount of time he would have spent in prison had his sentence not been suspended, then the BPH must release that person on parole. Once on parole, that person is supervised in the same manner and governed by the same conditions as those who have been released to outpatient status on the BPH's discretion. Cal. Welf. & Inst. Code § 3201(c).

Under the first option, described in section 3151, the civil addict may be determined to have recovered from addiction or imminent danger of addiction. Cal. Welf. & Inst. Code § 3151(a). In that case, the Secretary of the Board of Parole Hearings certifies to the Board that the defendant's release to outpatient status is proper. Id. §§ 3150, 3151(a). If twelve months have passed since the defendant's commitment, the Board automatically must consider whether outpatient treatment for the defendant is warranted. Id. § 3151(a)

Under the second option, described in section 3201(c), a

---

felony, who have been committed to inpatient treatment, or those persons committed to inpatient treatment without having been convicted of a crime, in accordance with California Welfare and Institutions Code section 3000 et seq. "Civil Addict" is the term used in the relevant regulations. See Cal. Code Regs. tit. 15 § 5000.

4

1  civil addict must automatically be released to parole if he has
2  spent a sufficient amount of time in custody. Specifically, if
3  the committed person has spent an equivalent amount of time in
4  custody as he would have if his sentence had not been suspended,
5  he must be released on parole under the jurisdiction of the
6  Board of Parole Hearings.  Cal. Welf. & Inst. Code §§ 3201(c),
7  3150(a). While on parole, he is supervised under the terms of
8  sections 3151 and 3152. He is also subject to the conditions
9  described in Section 3000 of the Penal Code, which describes
10 parole generally.

### 2.   Terms of Outpatient Status

Whether a civil addict is released to outpatient status via the discretion of the BPH as described in section 3151 or as a parolee as described in section 3201(c), as an outpatient the civil addict is "subject to all rules and regulations adopted by the [BPH]" and "all conditions imposed by the [BPH]." Cal. Welf. & Inst. Code § 3151(a) These conditions include those that are specific to the defendant, as well as those of "general applicability." Id.; see also 15 Cal. Code Regs. §§ 5302. The defendant may be returned to inpatient status pursuant to "those rules, regulations, and conditions." Id.

While a civil addict is an outpatient, he is supervised by the Department of Corrections and Rehabilitation. Id.; see also 15 Cal. Code Regs. § 5170. His supervision may include testing for narcotics use and counseling. Id. § 3152.

A civil addict may be returned to inpatient status if the

Board of Parole Hearings concludes that doing so is in the best interests of the defendant and society. Cal. Welf. & Inst. Code §§ 3151, 3152; 15 Cal. Code Regs. §§ 5334, 5335 (listing factors to be considered when deciding whether to issues a parole hold). The BPH bases this determination on reports of Department of Corrections agents "or other information," including law enforcement reports. Cal. Welf. & Inst. Code § 3152. If it is determined that the civil addict should be returned to inpatient treatment, a commissioner of the Board may order the civil addict to be retaken into custody until the Board's next meeting. Id. § 3151(b). A peace officer may execute a written order to this effect in the same manner that the officer would execute "ordinary criminal process." Id. § 3151(b), (c).

### 3. Process of Returning Civil Addict to Inpatient Status

The California Code of Regulations describes the process by which a civil addict is to be returned to inpatient status. Once a hold[3] is placed on an outpatient civil addict, a review conference must occur between the parole agent and unit supervisor as soon as possible, to determine whether the hold should continue. 15 Cal. Code Regs. § 5336. As soon as possible after the placement of the hold, the civil addict should receive written notice of the reasons for the hold. Id. §§ 5337, 5204. Suspected violations must be investigated fully and all

---

[3] The regulations describe that a hold may be the arrest and temporary detention of an outpatient civil addict pending an investigation of whether the civil addict violated the terms of his outpatient status. 15 Cal. Code Regs. § 5332.

available facts must be documented by the parole agent. Id. § 5352. This must be documented in a violation report, which should be submitted to the BPH in a timely manner. Id. §§ 5353, 5354, 5356.

Based on the violation report, the BPH determines whether to continue the civil addict's outpatient status or to return him to inpatient status. 15 Cal. Code Regs. § 5171. The BPH may also consider other alternatives, such as whether to modify the conditions of outpatient status. Id. Even if the BPH concludes that the civil addict has violated a term of his outpatient status, the BPH still has discretion to decide whether a return to inpatient status is warranted. Id. § 5171(j).

If a civil addict is in custody under a hold and is also undergoing prosecution for criminal charges, he is entitled to a probable cause hearing ("pre-return hearing") for the alleged violation of outpatient status. 15 Cal. Code Regs. § 5208. This hearing should occur "at a location near where the violation is alleged to have occurred." Id. This hearing may be substituted by the probable cause hearing on the additional criminal charges, if they are felony charges, or by a conviction, if the additional criminal charges are misdemeanors. Id. The civil addict also may waive the pre-return hearing. Id. The civil addict has the right to request an attorney for the pre-return hearing and the return hearing. Id. § 5207.

If the BPH determines that probable cause exists to believe that the civil addict violated the terms of outpatient status,

the BPH then holds a return hearing. 15 Cal. Code Regs. §§ 5210, 5211. At this stage, the civil addict has a panoply of rights, including that the return hearing be prompt, that the hearing be conducted by a neutral party, notice of the time and place of the hearing so that he may prepare a defense, the opportunity to be heard and to present testimonial and documentary evidence, and the opportunity to confront and cross-examine witnesses. Id. § 5204.

### 4. Discharge from Commitment

The superior court that committed the defendant to inpatient treatment retains the authority to discharge the defendant from commitment. Cal. Welf. & Inst. Code § 3200(b). In order to discharge a person, the Director of Corrections must recommend discharge to the BPH. Id. If the BPH agrees, it files a request for discharge with the superior court that had committed the defendant. Id. "The court may, unless otherwise prohibited by law, modify the sentence, dismiss the criminal charges of which the person was convicted, or suspend further proceedings, as it deems warranted in the interests of justice." Id.

### B. Applicability of Injunction to Civil Addicts

In determining the parameters of the plaintiff class, the court is guided by principles of contract and statutory interpretation. See In re. Cement, 817 F.2d at 1443. The court must consider the plain language of the class certification and the apparent intent of the parties and the court defining the

1 class at the time of certification. Id.

2  Here, the plain language of the class certification offers no guidance. The class was certified as California parolees, with little indication of which subgroups were included in this class. See Cervantes v. State of California, No. S-94-671 (E.D. Cal. Dec. 1, 1994). None of the named class members were civil addicts. See Complaint ¶¶ 4-14; First Amended Complaint ¶¶ 26-92. Certainly, there was no discussion by either of the parties or the court of whether civil addicts were included or excluded from the class. See Motion for Certification of Class Action (July 5, 1994); Defendants' Opposition to Class Certification (August 19, 1994); Transcript of Proceedings of September 6, 1994 (hearing on motion to certify class); Cervantes v. State of California, No. S-94-671 (E.D. Cal. Dec. 1, 1994). Neither the court nor the parties contemplated the inclusion of civil addicts in the class, and there is nothing to suggest that the parties had intended specifically to exclude or include civil addicts in the certified class. See id.

3  Turning to whether subsequent actions in the case suggest that civil addicts should properly be considered as class members, the court considers whether reading the 2004 permanent injunction so as to include civil addicts in the plaintiff class would render the injunction internally inconsistent or meaningless. See Bayview Hunters Point Community Advocates v. Metropolitan Transp. Com'n, 366 F.3d 692, 700 (9th Cir. 2004)(describing both contract and statutory interpretations).

After reviewing the statutory and regulatory framework of the civil addict program and the terms of the 2004 injunction and corresponding remedial plan, the court concludes that civil addicts may not properly be considered members of the plaintiff class. Paragraph 9(e) of the injunction defines a parole hold as "any invocation by Defendants of their authority to involuntarily detain a parolee for revocation proceedings under Section 3056 of the California Penal Code." Penal Code section 3056 does not apply to civil addict parolees, however. The authority to place an outpatient civil addict back into custody (the equivalent of a parole hold) derives from sections 3151 and 3152 of the Welfare and Institutions Code. Although Welfare and Institutions Code section 3151 may be read to state that portions of the Penal Code applying to parolees also apply to civil addict outpatients, this appears only to include those sections of the Penal Code describing the conditions of the outpatient's release. <u>See</u> Welf. & Inst. Code § 3151(a)(the outpatient may be "subject to all rules and regulations adopted by the [BPH] and subject to all conditions imposed by the [BPH], whether of general applicability . . ., and subject to being retaken and returned to inpatient status as prescribed by those rules, regulations, and conditions"); <u>see</u> <u>also</u> Cal. Penal Code § 3053 (granting Board of Prison Terms authority to impose on a parolee any conditions deemed proper).

The court concludes that including civil addicts in the plaintiff class would render inoperative as to civil addicts

those portions of the 2004 injunction and remedial plan that refer to parole holds. See, e.g., Stipulated Order for Permanent Injunctive Relief ¶¶ 11(b)(i)-(iv); Remedial Plan at 2, 3. Such a construction of the injunction is not supportable. Persons cannot be members of a class if subsequent orders in the same case would necessarily not apply to them. Consequently, the court must conclude that civil addicts are not members of the plaintiff class.[4]

### IV. CONCLUSION

As set forth above, the plaintiffs' motion to find the defendants in violation of the permanent injunction is DENIED.

IT IS SO ORDERED.

DATED: October 22, 2007.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[4] After reviewing the extensive and thorough briefing of this issue by the parties, the court believes that it is only the reference to Penal Code section 3056 that makes the 2004 injunction inapplicable to civil addicts.

11