UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JERRY VALDIVIA, ALFRED YANCY,
and HOSSIE WELCH, on their own
behalf and on behalf of the class
of all persons similarly situated,

        NO. CIV. S-94-671 LKK/GGH

    Plaintiffs,

  v.                          O R D E R

ARNOLD SCHWARZENEGGER, Governor of
the State of California, et al.,

    Defendants.

    On March 25, 2008, the court adopted the recommendations of the Special Master with regards to the enforcement of paragraph 24 of the permanent injunction that has been entered in the case. This provision of the injunction relates to the use of hearsay evidence in parole revocation proceedings. By adopting the Special Master's recommendations, the court ordered the defendants to revise their policies and procedures so as to bring them in line with the consent decree.

    In the instant motion, the defendants move the court to

1

stay its order pending appeal. The court resolves the motion on the papers and after oral argument. For the reasons stated herein, the court denies defendants' motion.

## I. BACKGROUND[1]

This suit has been brought by a class comprising California parolees who challenged the parole revocation procedures utilized by defendants as violative of their due rights under the Fourteenth Amendment. After the court granted partial summary judgment for the plaintiffs, the parties stipulated to a permanent injunction, which was issued as an order of the court in March 2004. The injunction ordered the defendants to implement certain policies and procedures in order to remedy the on-going violations of the plaintiffs' due process rights. Among these, the injunction provided that "[t]he use of hearsay evidence shall be limited by the parolees' confrontation rights in the manner set forth under controlling law as currently stated in United States v. Comito, 177 F.3d 1166 (9th Cir. 1999). The [defendants'] Policies and Procedures shall include guidelines and standards derived from such law." Stipulated Order for Permanent Injunctive Relief ("Permanent Injunction"), Mar. 9, 2004, ¶ 24.

A Special Master was appointed in August 2005. The Special Master reported that there has been an ongoing disagreement between the parties as to whether the policies and procedures

---

[1] The court has described the facts of the case in detail in its June 13, 2002 and June 9, 2005 orders.

2

defendants adopted pursuant to paragraph 24 of the permanent injunction were adequate. Report and Recommendation Regarding Motion to Enforce Paragraph 24 of the Valdivia Permanent Injunction ("Special Master's Report"), February 24, 2008, at 1. Additionally, after a recent opinion was handed down by the Ninth Circuit addressing the use of hearsay evidence in revocation proceedings, the defendants expressed a desire to change their policies and procedures. Id. This caused further disagreement, which culminated in a motion by plaintiffs before the Special Master in late 2007. The Special Master heard the motion in December 2007 and issued his resultant report and recommendations in February 2008.

   The Special Master's report and recommendations expressed several findings that are relevant to the instant motion. First, after a lengthy analysis, the Special Master concluded that defendants must employ the Comito balancing test when hearsay evidence is sought to be introduced against a parolee in revocation proceedings, even when that evidence falls under a recognized hearsay exception. Special Master's Report at 8-22. Second, the Special Master concluded that there was inadequate support for defendants' position that evidence that would otherwise be inadmissible could be utilized to corroborate hearsay evidence, when performing the Comito balancing test. Id. at 22-24. Finally, although the Special Master recommended the court not find a violation of the permanent injunction, the Special Master observed there were deficiencies in the

1 defendants' policies and procedures regarding the use of hearsay
2 evidence that suggested that defendants' staff were not
3 employing the proper legal standard when deciding whether to
4 admit hearsay evidence against a parolee during revocation
5 proceedings. Id. at 2-8. He recommended a set of changes to the
6 policies and procedures to address this failure. Id. at 26-29.
7 　　　After receiving objections from the parties, the court
8 adopted the Special Master's recommendations in its March 25,
9 2008 order. The defendants now seek a stay of that order pending
10 their appeal to the Ninth Circuit.

## II. STANDARD

12 　　　A district court has discretion to stay its order, pending
13 appeal, upon consideration of, "(1) whether the stay applicant
14 has made a strong showing that he is likely to succeed on the
15 merits; (2) whether the applicant will be irreparably injured
16 absent a stay; (3) whether issuance of the stay will
17 substantially injure the other parties interested in the
18 proceeding; and (4) where the public interest lies." Hilton v.
19 Braunskill, 481 U.S. 770, 776 (1987). The Ninth Circuit
20 conceives this standard as "two interrelated legal tests"
21 operating along a continuum. Lopez v. Heckler, 713 F.2d 1432,
22 1435 (9th Cir. 1983). At one end of the continuum, the moving
23 party may succeed if it shows that there is a probability of
24 success on the merits as well as a possibility of irreparable
25 injury. Golden Gate Restaurant Ass'n. v. City and County of San
26 Francisco, 512 F.3d 1112, 1115-16 (9th Cir. 2008). At the other

1  end, the moving party may succeed if it shows that it has raised
2  "serious legal questions" and that "the balance of hardships
3  tips sharply in its favor." Id. at 1116 (quoting Lopez, 713 F.2d
4  at 1435). Finally, the district court must consider the public
5  interest implicated by the grant of the stay; this consideration
6  is distinct from the harm to the parties in the court's grant or
7  denial of a stay. Natural Resource Defense Council, Inc. v.
8  Winter, 502 F.3d 859, 863-64 (9th Cir. 2007).

### III. ANALYSIS

**A.  Defendants' Likelihood of Success on the Merits**

In order to succeed in its motion, the defendants must show at least the potential for success on the merits of its appeal. See Golden Gate, 512 F.3d at 1115-16; Lopez, 713 F.2d at 1435. In other words, if the defendants have no possibility of obtaining a favorable ruling in the appellate court, a stay is improper. Here, the defendants have met their burden to show that they present "serious legal questions" in their appeal.

**1.  The Court's March 25, 2008 Order Is Appealable**

The plaintiffs argue that the defendants have no possibility for success on appeal because the court's March 25, 2008 order is not appealable. By statute, the Court of Appeals only has jurisdiction over final decisions of the district court and over certain interlocutory decisions, including those "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. §§ 1291, 1292. Here, the defendants contend that

5

appellate jurisdiction lies on the basis that the court's order was a final decision of the district court. Notice of Appeal, April 7, 2008, at Attachment 3 (Ninth Circuit Civil Appeals Docketing Statement).[2] The court agrees that the Ninth Circuit could find this a proper characterization and thus assert jurisdiction.

In the most basic sense, a final decision is one that "ends the litigation . . . and leaves nothing for the court to execute the judgment." Catlin v. United States, 324 U.S. 229 (1945); see also Warehouse Restaurant, Inc. v. Customs House Restaurant, Inc., 726 F.2d 480, 480-81 (9th Cir. 1984). In cases where finality is not so straightforward, however, courts should be guided by practical considerations when deciding whether an order is final in the meaning of § 1291. Gillespie v. United States Steel Corp., 379 U.S. 148, 152 (1964); Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545 (1949). In weighing practical considerations, the court should consider the expenditure of judicial resources that results from piecemeal review, versus the "danger of denying justice by delay." Gillespie, 379 U.S. at 152 (citation omitted).

A court's decision is not final where it is only a single step among many, which will culminate into one final judgment. Cohen, 337 U.S. at 546; see also Kimball v. Commandant Twelfth Naval Dist., 423 F.2d 88, 90 (9th Cir. 1970). In other words, a

---

[2] Moreover, the defendants did not follow the requirements of 28 U.S.C. § 1292(b) for seeking an interlocutory appeal.

1  decision is not final where review would constitute an
2  intervention or intrusion of the appellate court into a pending
3  matter. Cohen, 337 U.S. at 546. Appellate courts may assert
4  jurisdiction where that concern is absent and where review at
5  the moment it is sought serves the ends of justice. Id.;
6  Gillespie, 379 U.S. at 153; Branson v. City of Los Angeles, 912
7  F.2d 334, 336 (9th Cir. 1990); Peabody Coal Co. v. Local Unions
8  1734, 1508 & 1548, 484 F.2d 78, 84-85 (6th Cir. 1973).

9       The circumstances of the instant case suggest that it is
10 apt to characterize the March 25 order as final, for the purpose
11 of enabling appellate review. As described above, summary
12 judgment was entered for the plaintiffs in 2002 and a permanent
13 injunction issued in 2004. Since then, the court has merely
14 acted in order to enforce that injunction. Its March 25 order
15 was another instance of this: the court declined to find that
16 the defendants had violated the terms of the injunction,
17 declined to modify the injunction to alter the standard by which
18 hearsay was to be admitted in revocation proceedings, and gave
19 guidance to the defendants as to what effective policies and
20 procedures should guide the use of hearsay evidence. At this
21 stage in the case, the court is not progressing to a single
22 final judgment, see Cohen, 337 U.S. at 546, and appellate review
23 would not be an undue interference.

24      Moreover, the interests of justice weigh in favor of
25 review, in the sense that the defendants would have no other
26 remedy if the court has erred in its March 25 order. Because the

7

court is acting primarily as an enforcer of the permanent injunction, there is no innate endpoint to the court's retention of the case. Consequently, to require the defendants to wait to bring their appeal until some unknown moment in the future would exemplify "denying justice by delay," if the March 25 order does in fact merit reversal. See Gillespie, 379 U.S. at 152.

The plaintiffs encourage the court to hold that the March 25 order is not final because the court has retained jurisdiction to set deadlines for the order's enforcement. A decision, however, may be "final" under § 1291 even if it is not necessarily the last order in the case. Gillespie, 379 U.S. at 152. For instance, the Ninth Circuit has held that a denial of a temporary restraining order was a "final decision," as it implied that the district court would also deny a permanent injunction, although the case had not yet progressed to that point. Kimball, 423 F.2d at 90. Similarly, although the court may later set firm deadlines for the execution of the March 25 order, the conclusions of law and fact contained therein are firm.

Accordingly, the court cannot conclude that the defendants have no possibility of success in their appeal on the basis of jurisdiction.

**2. The Merits of the Defendants' Arguments on the Legal Questions Presented for Appeal**

The defendants represent to the court that they are appealing three aspects of the March 25 order: (1) that the Comito balancing test must be employed even when the evidence

sought to be introduced falls under a hearsay exception; (2) that hearsay cannot be corroborated with other hearsay, when considering the reliability of the evidence under the Comito test; and (3) that the order exceeds the scope of the injunction and controlling authority. The court concludes that the defendants have shown only that they present a "serious legal question" as to the first and second of these grounds.

        **a.  Comito Balancing Where the Evidence Falls Under a Recognized Hearsay Exception**

While not desiring simply to restate the analysis contained in the Special Master's report, incorporated in the March 25 order, it is apparent to the court that the defendants have not shown a probability of success on the merits of this issue, but have shown that they will present the Court of Appeals with a legal question meriting review.

As described above, the Permanent Injunction provides that the use of hearsay evidence in revocation proceedings is governed by United States v. Comito, 177 F.3d 1166 (9th Cir. 1999). Preliminarily, the text of the Injunction appears to state that Comito controls the issue of the introduction of hearsay evidence and consequently if the law of the Circuit changes, an amendment of the Injunction would be required. Because the Injunction was the result of the joint work and stipulation of both parties, it seems that defendants agreed to be bound by Comito. The court is therefore inclined to believe that defendants' argument that subsequent cases have undermined

1   Comito are misplaced.
2       Nevertheless, it is possible that the Circuit court will
3   disagree, holding that it would be improper to bind the
4   defendants to Comito's requirements if Comito no longer remains
5   good law. The court therefore turns to the merits of defendants'
6   argument.
7       Despite defendants' assertion to the contrary, it does not
8   appear that Comito has been abrogated by subsequent decisions.
9   Comito held that hearsay evidence may only be used against a
10  releasee at a revocation hearing after the court or
11  decisionmaker weighs the releasee's interest in his
12  confrontation right against the government's good cause for not
13  producing the witness. Comito, 177 F.3d at 1170. The releasee's
14  interest in confrontation is primarily gauged by the importance
15  of the evidence to the court's ultimate decision and the
16  accuracy and reliability of the evidence. Id. at 1171 (citing
17  United States v. Martin, 984 F.2d 308, 309-10 (9th Cir. 1993)).
18      In Comito, the hearsay testimony at issue was alleged
19  statements by the victim made to a police officer. Id. The court
20  held that the unreliability of this type of hearsay evidence
21  served to strengthen Comito's interest in confronting the
22  victim. Id. The court contrasted this hearsay evidence to other
23  types that were more reliable, such as the regular report of a
24  business or an official record of a probation officer. Id.
25  (citing Martin, 984 F.2d at 314 and United States v. Walker, 117
26  F.3d 417, 421 (9th Cir. 1997)). In so doing, the court implied

that hearsay that falls under a traditional exception to the hearsay rule may be deemed more reliable when conducting the balancing test; it did not suggest that such types of hearsay could bypass the balancing test entirely.

Subsequently, in <u>United States v. Hall</u>, 419 F.3d 980 (9th Cir. 2005), the Ninth Circuit confronted, albeit obliquely, the issue of the admission of hearsay evidence in a revocation hearing. There, the releasee challenged evidence of a domestic violence charge that was one of the bases for revocation of his supervised release. <u>Hall</u>, 419 F.3d at 983-84. The court employed the <u>Comito</u> balancing test, concluding that Hall's interest in confronting the adverse witness (the alleged victim of the domestic violence) was low, since there was sufficient non-hearsay evidence to convict him of the domestic violence charge. <u>Id.</u> at 986-87. The court then observed that several pieces of evidence supporting the domestic violence charge were admissible under hearsay exceptions, including medical records and the business records of the parole officer, and that these types of evidence "should satisfy the lesser standard of due process" afforded to releasees in revocation proceedings. <u>Id.</u> at 987. It then concluded, "Hall's interest in excluding hearsay evidence relevant to the domestic violence allegation was thus weak . . . ." <u>Id.</u>

As the Special Master explained, <u>Hall</u>'s analysis does not seem to suggest that the <u>Comito</u> test is unnecessary when evidence falling under a hearsay exception is at issue. On the

11

contrary, by employing the Comito test, the Hall court seemed to signal that this remained the standard for analyzing the admissibility of hearsay evidence in revocation proceedings. Moreover, as detailed in the Special Master's report, this approach comports with prior cases in the Circuit as well as the law governing the due process rights of parolees in revocation proceedings generally. Consequently, the court cannot agree with defendants that there is a probability or even a strong likelihood that they will succeed on the merits of this claim on appeal.

Nevertheless, because the Ninth Circuit has never addressed the issue squarely, it is fair to conclude that the defendants raise a "serious legal question" for review. Consideration of the remaining prongs of the Hilton test is therefore warranted and occurs below.

### b. Whether Hearsay Can Be Corroborated With Other Hearsay, For the Purpose of Determining Its Reliability Under Comito

The defendants also assert that Comito permits hearsay evidence to be corroborated with other hearsay in order to show the former's reliability, within the context of the balancing test. Just as the court concluded in adopting the Special Master's finding in the March 25 order, there seems little support for this approach under the Circuit's precedent.

In Hall, the court considered whether hearsay evidence should have been admitted to substantiate the releasee's charge of false imprisonment. Hall, 419 F.3d at 987-88. The court

12

concluded that this evidence bore "some indicia of reliability," noting both hearsay and non-hearsay evidence that corroborated it. Id. It is therefore unclear what corroborative weight, if any, the court gave the hearsay evidence.

The court, like the Special Master, is aware of no other binding authority that could support defendants' position. There certainly is nothing that suggests to the court that defendants have any likelihood of success in their appeal of this issue. Since, however, the Court of Appeals has not held on this issue and it presents a question that a court is likely to confront again, see Gilder v. PGA Tour, Inc., 936 F.2d 471 (9th Cir. 1991), it is again fair to conclude that this is a serious legal question for review.

        **c.    Whether the Court's Order For the Revision of the Defendants' Policies and Procedures**

Finally, the defendants contend that the revisions to their policies and procedures that the court ordered on March 25 fall outside of the scope of the permanent injunction and the requirements of Morrissey v. Brewer, 408 U.S. 471 (1972). The defendants have not shown any likelihood of success on appeal on this claim, nor does it pose a legal question sufficiently serious to merit appellate review.

The Permanent Injunction required the defendants to create policies and procedures to guarantee the due process rights of the plaintiffs in revocations procedures, which were to include "guidelines and standards derived from" Comito. Permanent

13

Injunction ¶ 24. While the defendants seemed to comply with the letter of this requirement, by creating and promulgating policies and procedures in apparent good faith, they did not comply with its spirit. Consequently, the court agreed with the Special Master's recommendations that while it was not appropriate to hold that the defendants violated the Permanent Injunction, the policies and procedures remained so deficient as to warrant additional court direction as to what minimum elements the policies and procedures must contain so as to adequately serve their function of guaranteeing due process rights of the plaintiffs under Morrissey and Gagnon v. Scarpelli, 411 U.S. 778 (1973).

This determination was based on several factual findings of the Special Master. These include that defendants' written materials repeatedly misstated what the Comito balancing rule is, which is a plain indication that Deputy Commissioners would erroneously apply the balancing test. Special Master's Report at 2-3. Training on hearsay issues is minimal and "confusing," which is of particular concern since a minority of the Deputy Commissioners are lawyers. Id. at 4-5. These concerns manifest in observed instances where the Deputy Commissioners have misapplied the law governing the admission of hearsay. Id. at 5-8. Finally, it is difficult to ascertain the true scope of the problem, there has been no systematic review of the Deputy Commissioner's application of hearsay law in revocation proceedings. Id. at 7-8.

These findings suffice to show that there is significant danger that the due process protections to which the plaintiffs are entitled are not being respected by the defendants, as evidenced by the systemic deficiencies in training and the accuracy of written materials. Indeed, this danger is a reality, as the specific instances of misapplication of hearsay law in revocation proceedings demonstrate. The changes ordered by the court on March 25 reflect its attempt to bring the defendants' policies and procedures in line with the terms of the Permanent Injunction, which seeks, inter alia, to prevent on-going due process violations as defined by Morrissey and Gagnon. In other words, the March 25 order does not create "new" requirements, as the defendants claim, but rather makes explicit what the policies and procedures should have contained upon their inception several years ago.

The court cannot agree that there is any likelihood that the defendants will succeed on the merits of this claim on appeal or even that it presents a serious question of law that the appellate court would find worthy of review.

**B.   The Balance of Hardships**

Because the defendants only show that there are "serious legal questions" arising from the court's March 25 order, in order for the stay to be warranted, the defendants must show that the balance of hardships tips "sharply" in their favor. They have not made this showing.

The primary hardships asserted be defendants are the

15

financial costs and administrative burden of implementing the measures required by the March 25 order, if that order is reversed. These costs include those associated with the development of a system to track data, training the Deputy Commissioners to perform Constitutionally adequate revocation hearings, and participation in the meet-and-confer process. Additionally, the defendants contend that the process by which it would contract with outside providers is time-consuming. Finally, defendants state that the March 25 order would insert the plaintiffs and Special Master into personnel matters of the State, harming both state employees and potentially exposing the State to litigation.

As a preliminary matter, several of these claimed hardships carry no weight in the court's balancing process. The meet-and-confer process, while required by the March 25 order, was already required by the Permanent Injunction. See Stipulated Order for Permanent Injunctive Relief ¶ 10 (requiring the defendants to "meet periodically with Plaintiffs' counsel to discuss their development" of all policies and procedures developed in accordance with the injunction). Therefore, even if the court had not issued its guidelines for the policies and procedures relevant to Paragraph 24 of the Permanent Injunction, the parties would nevertheless be required to meet and confer until they reached an agreement or an impasse requiring court resolution. See id. The March 25 order has added no extra burden on the defendants in this regard.

16

1    The court also places no weight on the defendants' parade
2 of horribles regarding the improper insertion of the plaintiffs
3 and Special Master into State personnel matters. The March 25
4 order does no such thing. The order, through its adoption of the
5 Special Master's recommendations, requires defendants to create
6 a plan that adequately ensures that the Deputy Commissioners are
7 in fact carrying out revocation hearings that meet "minimum
8 standards" as defined by the defendants. Special Master's Report
9 at 28. It does not confer on plaintiffs or the Special Master
10 the right to inspect personnel files or to monitor staff
11 evaluations or discipline proceedings. Nor, as the defendants
12 suggest, would it compel the termination of a Deputy
13 Commissioner who fails to meet these minimum standards. Instead,
14 the order plainly gives the defendants discretion to create a
15 plan that ensures that revocation hearings pass Constitutional
16 muster, so long as the plaintiffs and Special Master have input
17 in the plan itself and so long as the plan "proceeds under the
18 guidance of the Special Master." See id. at 28-29. Defendants'
19 allegations beyond this appear to be no more than hyperbolic
20 hand-wringing.

21    What remains, then, are the financial costs and
22 administrative burden of implementing policy reforms that may
23 later be deemed unnecessary by the Circuit court. On the other
24 side of the equation, if a stay is granted, the injury to the
25 plaintiffs includes the possibility of unlawful revocation of
26 parole based on the improper admission of hearsay evidence.

Balancing these competing hardships, those of the plaintiffs are plainly more weighty. Where human welfare and the potential for suffering are concerned, the state's expenditures of money, time, and administrative resources are rarely so overwhelming so as to permit a court to conclude that balance of hardships sharply favors the latter. See, e.g., Lopez, 713 F.2d at 1437; Golden Gate, 512 F.3d at 1126; see also Long v. Robinson, 432 F.2d 977, 980-81 (4th Cir. 1970). Not only are plaintiffs' potential physical and emotional suffering resulting from wrongful incarceration some of the most burdensome "hardships" cognizable, but this suffering could not truly be remedied retroactively. See Lopez, 713 F.2d at 1437 (wrongful loss of disability benefits could not be remedied by retroactive restoration). A wrongful incarceration undoubtedly strains an individual's personal relationships and career stability, as well as causes personal distress. It is difficult to imagine how this damage could be repaired retroactively, even if a plaintiff succeeds in writ of habeas corpus later. Put plainly, "faced with such a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." Id.

**C.   The Public Interest**

Finally, the court considers whether the public interest lies in granting the stay or denying it. Hilton, 481 U.S. at 776. While defendants are correct in asserting that the strain to public finances and administrative resources figures into

this calculus, it is not dispositive. The court must also consider the harm to the plaintiffs' friends and family members, as well as the myriad interests of society as a whole. Lopez, 713 F.2d at 1437; Golden Gate, 512 F.3d 1126.

The public certainly has an interest in seeing that public resources are not expended needlessly. However, "the government must be concerned not just with the public fisc, but also with the public weal." Lopez, 713 F.2d at 1437. The public has an interest in ensuring that revocation proceedings are fair, because the public has a general interest in the guarantee of the due process rights enshrined in the Constitution. See id. In addition, those who rely on the individual plaintiffs in the context of various relationships -- whether it be family, friend, or even employer or employee -- have an interest in ensuring that that plaintiff is not wrongfully incarcerated through the misuse of hearsay evidence. Although the court is mindful of the countervailing interest in prudent spending of state financial and administrative resources, the public interest firmly favors the plaintiffs in this instance.

In sum, although the defendants present a serious legal question that may merit appellate review, the balance of hardships and public interest weigh in favor of denial of the stay.

//
//
//

**IV. CONCLUSION**

Accordingly, the defendants' motion for a stay of the court's March 25, 2008 order is DENIED.

IT IS SO ORDERED.


IT IS SO ORDERED.

DATED: May 5, 2008.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT