1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                   EASTERN DISTRICT OF CALIFORNIA

9

10  JERRY VALDIVIA, ALFRED YANCY,
    and HOSSIE WELCH, on their own
11  behalf and on behalf of the class
    of all persons similarly situated,
12                                          NO. CIV. S-94-671 LKK/GGH
            Plaintiffs,
13
       v.                                            O R D E R
14
    EDMUND G. BROWN, JR., Governor of
15  the State of California, et al.,

16          Defendants.
    _____/
17

18        Pending before the court are two motions following the remand

19  of this matter by the Ninth Circuit. Plaintiffs move to enforce the

20  stipulated injunction issued by this court on March 9, 2004, and

21  to prohibit enforcement of Prop. 9 § 5.3, passed by California

22  voters in 2008. Defendants move to modify the injunction to conform

23  with Prop. 9. The court resolves the instant motions on the papers

24  and after oral argument. For the reasons that follow, plaintiffs'

25  motion is granted in part and denied in part. Defendants' motion

26  is granted in part and denied in part.

                                    1

# I. Background

The factual and procedural background of this case has been recited in detail in prior orders of this court. See e.g., Valdivia v. Schwarzenegger, 603 F.Supp.2d 1275, 1276. A summary of this background and subsequent developments follows.

Plaintiffs filed this class action in 1994, challenging California's parole revocation process on constitutional grounds. In 2002, this court granted partial summary judgment to plaintiffs, holding that the parole revocation process violated plaintiffs' due process rights. Valdivia v. Davis, 206 F. Supp. 2d 1068 (E.D. Cal. 2002). Specifically, the 2002 order held that the system in place at the time "allowing delay of up to forty-five days or more before providing the parolee an opportunity to be heard regarding the reliability of the probable cause determination does not" meet constitutional muster. Id. at 1078. In October 2002, the court ordered defendants to file a proposed remedial plan to address the constitutional deficiencies identified in the June order. In July 2003, the court issued an order in response to defendants' request for guidance on "what precisely the Constitution requires with respect to the timing and content of revocation hearings." Reiterating that procedural due process requirements are flexible as to each factual situation, the court nevertheless concluded, after a comprehensive review of the case law, that "a period of ten days [to hold a probable cause hearing] strikes a reasonable balance between inevitable procedural delays and the state's interest in conducting its parole system, on the one hand, and the

liberty interests of the parolees, on the other." July 23, 2003 Order at 13. The court additionally set forth some minimal standards for the probable cause hearings with respect to accuracy.

On March 9, 2004, this court approved a stipulated settlement and permanent injunction ("Injunction"), which incorporated a remedial plan submitted by the defendants. The Injunction contains the following provisions:

> 1) A parole revocation hearing shall be held no later than 35 calendar days from the date of the placement of the parole hold. Stipulated Permanent Injunction ("Inj.") ¶ 11(b)(iv), 23.
> 2) Defendants shall hold a probable cause hearing no later than 10 business days after the parolee has been served with notice of the charges and rights, which shall occur not later  than three business days from the placement of the parole hold. Inj. ¶ 11(d).
> 3) Defendants shall appoint counsel for all parolees at the beginning of the RTCA stage of the revocation proceedings. Defendants shall provide an expedited probable cause hearing  upon a sufficient offer of proof by appointed counsel that there is a complete defense to all parole violation charges that are the basis of the parole hold. Inj. ¶ 11(b)(I).
> 4) At probable cause hearings, parolees shall be allowed to present evidence to defend or mitigate against the charges and proposed disposition. Such evidence shall be presented through documentary evidence or the charged parolee's testimony, either or both of which may include hearsay testimony. Inj. ¶ 22.
> 5) The use of hearsay evidence shall be limited by the parolees' confrontation rights in the manner set forth under controlling law as currently stated in United States v. Comito, 177 F.3d 1166 (9th Cir. 1999). The Policies and Procedures shall include guidelines and standards derived from such law. Inj. ¶ 24.
> 6) Parolees' counsel shall have the ability to subpoena and present witnesses and evidence to the same extent and under the same terms as the state. Inj. ¶ 21.

On November 4, 2008, California voters passed Proposition 9: "Victims' Bill of Rights Act of 2008: Marsy's Law." Prop. 9

adds § 3044 to the California Penal Code. That section provides:

a) Notwithstanding any other law, the Board of Parole Hearings. . .shall be responsible for protecting victims' rights in the parole process. Accordingly, to protect a victim from harassment and abuse during the parole process, no person paroled from a California correctional facility following incarceration for an offense committed on or after the effective date of this act shall, in the event his or her parole is revoked, be entitled to procedural rights other than the following:

   (1) A parolee shall be entitled to a probable cause hearing no later than 15 days following his or her arrest for violation of parole.

   (2) A parolee shall be entitled to an evidentiary revocation hearing no later than 45 days following his or her arrest for violation of parole.

   (3) A parolee shall, upon request, be entitled to counsel at state expense only if, considering the request on a case-by-case basis, the board or its hearing officers determine:

      (A) The parolee is indigent; and

      (B) Considering the complexity of the charges, the defense, or because the parolee's mental or educational capacity, he or she appears incapable of speaking effectively in his or her own defense.

   (4) In the event the parolee's request for counsel, which shall be considered on a case-by-case basis, is denied, the grounds for denial shall be stated succinctly in the record.

   (5) Parole revocation determinations shall be based on a preponderance of evidence admitted at hearings including documentary evidence, direct testimony, or hearsay evidence offered by parole agents, peace officers, or a victim.

   (6) Admissions of the recorded or hearsay statement of a victim or percipient witness shall not be construed to create a right to confront the witness at the hearing.

(b) The board is entrusted with the safety of victims and the public and shall make its determination fairly, independently, and without bias and shall not be influenced by or weigh the state cost or burden associated with just decisions. The board must accordingly enjoy sufficient autonomy to conduct unbiased hearings, and maintain an independent legal and administrative staff. The board shall report to the Governor.

Prop. 9 § 5.3.

   Following the passage of Prop. 9, plaintiffs moved to enforce

4

1  the injunction, asserting that portions of § 3044 conflicted with

2  provisions of the injunction and must be held invalid. Defendants

3  moved to modify the injunction, arguing that § 3044 does not

4  conflict with the injunction, and that if there was a conflict, the

5  injunction should be modified to conform to Prop. 9.

6      The court issued an order on those motions on March 29, 2009

7  ("March Order"). The March Order noted four provisions of § 3044

8  that were in plain conflict with the injunction. See Valdivia 603

9  F. Supp. 2d at 1282-83. Citing the Supremacy Clause of the

10 Constitution and cases interpreting it,[1] the court held that where

11 there was a conflict between Prop. 9 and the injunction, Prop. 9

12 could not be enforced. Thus, the court granted plaintiffs' motion

13 and denied defendants'.

14     Defendants appealed the March Order to the Ninth Circuit. The

15 Ninth Circuit rendered a decision on March 25, 2010, vacating and

16 remanding this court's March Order. The Ninth Circuit held "unless

17 a state law is found to violate a federal law, or unless the

18 Injunction is found necessary to remedy a constitutional violation,

19 federalism principles require the reconciliation of state law and

20

21     [1] See, e.g., Cooper v. Aaron, 358 U.S. 1 (1958)("If the
   legislatures of the several states may, at will, annul the
22 judgments of the courts of the United States, and destroy the
   rights acquired under those judgments, the constitution itself
23 becomes a solemn mockery."); Missouri v. Jenkins, 495 U.S. 33, 57
   (1990)(district court order requiring the state to raise taxes
24 beyond the state statutory limit in order to fund a desegregation
   plan must be enforced in spite of state statute, as "to hold
25 otherwise would fail to take account of the obligations of local
   governments, under the Supremacy Clause, to fulfill the
26 requirements that the Constitution imposes on them.").

1  federal injunctions." <u>Valdivia v. Schwarzenegger</u>, 599 F.3d 984, 995

2  (9th Cir. 2010). This court received the mandate on September 22,

3  2010, and briefing by the parties was completed in October 2011.

### II. Standard to Enforce or Modify Injunction

5       A district court has continuing jurisdiction to enforce its

6  own injunctions. <u>Crawford v. Honig</u>, 37 F.3d 485, 488 (9th Cir.

7  1994). "An injunction often requires continuing supervision by the

8  issuing court and always a continuing willingness to apply its

9  powers and processes on behalf of the party who obtained that

10 equitable relief." <u>System Federation No. 91 Railway Employees'</u>

11 <u>Dep't v. Wright</u>, 364 U.S. 642, 647 (1961).

12      Under Federal Rule of Civil Procedure 60(b)(5), a court may

13 relieve a party from its obligations under an order of the court

14 if prospective application of the order is no longer equitable. See

15 <u>Sys. Fed'n No. 91 v. Wright</u>, 364 U.S. 642, 646-47. Modification of

16 an injunction, including a consent decree, is considered equitable

17 when there has been a significant change in relevant law or factual

18 circumstances. Id. at 647-48; see also <u>Rufo v. Inmates of Suffolk</u>

19 <u>County Jail</u>, 502 U.S. 367 (1992). The party seeking the

20 modification bears the burden to show that modification is

21 warranted. <u>Rufo</u>, 502 U.S. at 383. If it does, the court must then

22 consider whether the modification is appropriately tailored to the

23 changed circumstance. <u>Id.</u>

24      "A district court may refuse to modify a federal injunction

25 in light of a given state law where such a law violates federal

26 law. See <u>Clark v. Coye</u>, 60 F.3d 600, 605 (9th Cir. 1995). However,

1  merely finding that a state law conflicts with a federal

2  injunction, is insufficient to deny modification of the injunction,

3  and "clearly constitute[s] an abuse of discretion." <u>Valdivia v.</u>

4  <u>Schwarzenegger</u>, 599 F.3d 984, 995 (9th Cir. 2010).

5  **III. Analysis**

6      The Ninth Circuit has directed the court to determine whether

7  "any aspect of the California parole revocation procedures, as

8  modified by Proposition 9, violated constitutional rights, [and

9  whether] the Injunction was necessary to remedy a constitutional

10  violation." <u>Valdivia v. Schwarzenegger</u>, 599 F.3d 984, 995 (9th Cir.

11  2010). Without such findings, the injunction must be reconciled

12  with California law as expressed in Prop. 9.

13      The starting place for determining the due process rights of

14  individuals prior to parole revocation is <u>Morrissey v. Brewer</u>, 408

15  U.S. 471 (1972). There, the Supreme Court held that, although

16  parolees enjoy only "conditional liberty," termination of that

17  liberty constitutes a "grievous loss" requiring "some orderly

18  process." <u>Id.</u> at 495. The Court held that the process that is due

19  to an individual facing parole revocation includes "two hearings,

20  one a preliminary hearing at the time of his arrest and detention

21  to determine whether there is probable cause to believe that he has

22  committed a violation of his parole, and the other a somewhat more

23  comprehensive hearing prior to the making of the final revocation

24  decision." <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 781-782 (1973)

25  (citing <u>Morrisey</u>). With respect to the preliminary hearing, the

26  parolee is entitled to an "uninvolved decision-maker;" notice of

7

the hearing and its purpose, including the nature of the alleged violations; the ability to speak on his own behalf, present letters, documents, or witnesses; the ability, in some cases, to question any person who has given adverse information on which parole revocation is to be based; a written summary of the proceedings; and a decision on the record. Morrisey 485-487.

Defendants ask the court to restrict its analysis to the four provisions of Prop. 9 that the court has already found to be in plain conflict with the Injunction, namely § 3044(a), § 3044(a)(3), § 3044(a)(2), and § 3044(b). See Valdivia, 603 F.Supp.2d at 1282. Plaintiffs assert, correctly in the court's view, that the Ninth Circuit has directed the court to determine whether any provisions of § 3044 violate constitutional rights.

**A. Section 3044(a)**

**i. Whether § 3044(a) violates constitutional rights.**

California Penal Code § 3044(a) provides:

Notwithstanding any other law, the Board of Parole Hearings. . . shall be responsible for protecting victims' rights in the parole process. Accordingly, to protect a victim from harassment and abuse during the parole process, no person paroled from a California correctional facility following incarceration for an offense committed on or after the effective date of this act shall, in the event his or her parole is revoked, be entitled to procedural rights other than the following...

Plaintiffs argue that this provision prohibits state officers from implementing procedures required under due process, since "Prop. 9's abbreviated list falls short of what the Due Process Clause and other federal laws obligate the State to provide when

8

1  a parolee's conditional liberty is at stake." Pls.' Mot. 7, ECF No.

2  1685. Defendants argue that the Constitution does not require any

3  additional procedural rights beyond what is provided for in § 3044.

4       § 3044(a) provides that California parolees are entitled only

5  to an enumerated list of procedural rights that does not include

6  all of the procedures that the Supreme Court has determined to be

7  required under the Due Process Clause. Defendants argue that §

8  3044(a) merely makes clear that under California law, parolees are

9  not entitled to any process other than the Constitutional minimums.

10 Defs.' Opp'n 13, ECF No. 1694. Defendants assert "although section

11 3044 does not exhaustively list in detail every hearing procedure

12 required by due process, it incorporates all due process

13 requirements not specifically listed in the statute through the

14 obligation to provide a 'hearing.'" <u>Id.</u> Defendants' argument is

15 untenable under a plain reading of the section. It is hard to see

16 how the words "no person. . . shall be entitled to procedural

17 rights other than the following. . .," followed by a short

18 enumerated list can be interpreted as incorporating any procedures

19 that aren't specifically listed. By its plain terms, Prop. 9

20 precludes reading any additional procedural rights into the

21 statute.

22      As discussed below, the listed procedures fall short of what

23 is required by federal due process. Accordingly, § 3044(a)

24 impermissibly deprives members of the plaintiff class the process

25 due under the Constitution.

26

**C. Sections 3044(a)(1)and 3044(a)(2)**

**ii. Whether 3044(a)(1) and (a)(2) are unconstitutional**

Section 3044(a) sets forth parolees' rights with respect to probable cause and evidentiary revocation hearings: "(1) A parolee shall be entitled to a probable cause hearing no later than 15 days following his or her arrest for violation of parole. (2) A parolee shall be entitled to an evidentiary revocation hearing no later than 45 days following his or her arrest for violation of parole." Plaintiffs contend that this section deprives parolees of due process rights as set forth in <u>Morrisey</u>. Defendants assert that all of those rights are incorporated into the statue by use of the word "hearing." The court has already explained why defendants' position is contrary to the plain meaning of the statute.

In <u>Morrisey v. Brewer</u>, 408 U.S. 471 (1972), the Supreme Court set forth the minimum requirements of due process for probable cause and revocation hearings. For probable cause hearings, parolees are entitled to a hearing "conducted at or reasonably near the place" of the alleged violation, "as promptly as convenient after arrest"; notice that the hearing will take place and of its purpose; notice of the allegations; a determination by an "independent officer"; the right to speak on his own behalf and bring letters, documents, and witnesses; a written summary of the proceedings; and a decision based on stated reasons and cited evidence. <u>Id.</u> at 487-88.

For a revocation hearing, the minimum due process requirements are: "(a) written notice of the claimed violations of parole; (b)

1   disclosure to the parolee of evidence against him; (c) opportunity

2   to be heard in person and to present witnesses and documentary

3   evidence; (d) the right to confront and cross-examine adverse

4   witnesses (unless the hearing officer specifically finds good cause

5   for not allowing confrontation); (e) a "neutral and detached"

6   hearing body such as a traditional parole board, members of which

7   need not be judicial officers or lawyers; and (f) a written

8   statement by the factfinders as to the evidence relied on and

9   reasons for revoking parole." Id. at 489. Additionally, the

10  revocation hearing must take place within a "reasonable time after

11  the parolee is taken into custody." Id.

12      The bare requirements in § 3044 fall short of the minimum due

13  process set forth in Morrisey. The court need not list each element

14  missing from § 3044,[2] but they include notice, a written summary

15  of the proceedings and of the revocation decision, the opportunity

16  to present documentary evidence and witnesses, and disclosure to

17  the parolee of the evidence against him. Indeed, in this very case,

18  the court already held that "the opportunity to present documentary

19  evidence, the opportunity to present witnesses, and a conditional

20  right to confront adverse witnesses are constitutionally-required

21  components of due process." July 23, 2003 Order 15, ECF No. 796.

22  Accordingly, the court finds that Sections 3044(a)(1)and 3044(a)(2)

23  are unconstitutional.

24      Defendants focus on the time frames set forth in these

25

26      [2] Such a list would read almost identical to the complete list
    of requirements already cited from Morrisey.

sections. Doing so is understandable, since the 10- and 45- day time limits are the only thing guaranteed in the statute at issue. Plaintiffs argue that this court has already held that 45 days is an unconstitutionally long delay between the commencement of a parole hold and the revocation hearing. That holding, however, was in the context of a "unitary" revocation scheme—one that does not include a preliminary probable cause hearing. <u>Valdivia v. Davis</u>, 206 F. Supp. 2d 1068, 1078 (E.D. Cal. 2002). In the scheme under review at the time, "at no time prior to the unitary revocation hearing d[id] parolees have an opportunity to present their position to an independent decision-maker or to challenge, in any manner, whether the parole officer had probable cause for the parole hold and resulting detention." <u>Id.</u> at 1071. In that context, this court held "California's system allowing a delay of up to forty-five days or more before providing the parolee an opportunity to be heard regarding the reliability of the probable cause determination does not" meet constitutional muster. <u>Id.</u> at 1078. The court has never held that forty-five days exceeds constitutional limits when a <u>Morrisey</u>-compliant preliminary hearing has been held in the interim. In Morrisey itself, the Supreme Court held that "a lapse of two months, would not appear to be unreasonable" for a revocation hearing when a preliminary hearing has been held promptly after arrest. <u>Morrisey</u>, 408 U.S. at 489. However, as noted, the revocation scheme at issue here does not guarantee a prompt probable cause hearing with all of the minimum process set forth in <u>Morrisey</u>.

1    Accordingly, the court concludes that §§ 3044(a)(1) and

2   3044(a)(2) violate the constitution because they deprive parolees

3   of the procedural rights guaranteed in Morrisey.

4   **iii. Whether the Injunction is necessary with respect to §**

5   **3044(a)(1) and (a)(2)**

6    As noted by the Ninth Circuit in this case, "the scope of

7   federal injunctive relief against an agency of state government

8   must always be narrowly tailored to enforce federal constitutional

9   and statutory law only." Valdivia, 599 F.3d at 995 (internal

10  citation omitted). The narrow tailoring requirement, however, does

11  not deprive a district court of its "substantial flexibility" to

12  craft remedies once constitutional violations are found. Brown v.

13  Plata, 131 S. Ct. 1910, 1944 (2011). Injunctive relief "does not

14  fail narrow tailoring simply because it will have positive effects

15  beyond the plaintiff class. . . A narrow and otherwise proper

16  remedy is not invalid simply because it will have collateral

17  effects." Id. at 1940. See also Milliken v. Bradley, 433 U.S. 267,

18  281-82 (1977)("The well-settled principle that the nature and scope

19  of the remedy are to be determined by the violation means simply

20  that federal-court decrees must directly address and relate to the

21  constitutional violation itself. . . But where. . . a

22  constitutional violation has been found, the remedy does not

23  'exceed' the violation if the remedy is tailored to cure the

24  condition that offends the Constitution."). In addition, the court

25  should account for practical consideration when crafting its

26  remedy. Matthews v. Eldridge, 424 U.S. 319 (1976).

1    The Injunction at issue here provides for the following
2  procedure with respect to preliminary and revocation hearings:
3  within 3 days of incarceration in a parole hold, the parolee will
4  be served with actual notice of the alleged violation, including
5  a short factual summary of the charged conduct and written notice
6  of the parolee's rights regarding the revocation process and
7  timeframes; within 10 days after the parolee has been served with
8  a notice of the charges, defendants shall hold a hearing to
9  determine whether there is probable cause, unless the parolee
10 waives or seeks a continuance of the probable cause hearing; within
11 35 days of the placement of the parole hold, defendants shall
12 provide a final revocation hearing.

13   Plaintiffs argue that the 35-day outer limit for a probable
14 cause hearing was negotiated by the parties in exchange for other
15 aspects of the overall scheme, including a truncated probable cause
16 hearing. For the reasons already discussed, plaintiffs assertion
17 that this court already held 45 days to be unreasonable fails. In
18 <u>Morrisey</u>, the Court found expressly that two months is not an
19 unreasonable delay for completing a revocation hearing, assuming
20 all of the other due process requirements are met, including a
21 probable cause hearing within ten days.

22   Accordingly, the court finds that the injunctive measures are
23 necessary to remedy constitutional violations created in §
24 3044(a)(1) and (a)(2), except that defendants shall provide a
25 revocation hearing no later than the 45th calendar day after the
26 placement of the parole hold. Injunction ¶¶ 11(b)(iv)and 23 are

modified accordingly to reconcile with 3044(a)(2)'s 45-day time limit.

**C. § 3044(a)(3)**

**i. Whether Section 3044(a)(3) violates constitutional rights**

Section 3044(a)(3) provides that parolees are entitled to counsel at the state's expense on a case-by-case basis, and only if the parolee is indigent and appears incapable of speaking effectively in his or her own defense, given the complexity of the issues and the parolee's mental capacity. Plaintiffs argue that in the context of California's parole revocation system, this provision falls below the minimum requirements for appointment of counsel set forth in <u>Gagnon v. Scarpelli</u>, 411 U.S. 778 (1973).

In <u>Gagnon</u>, the Supreme Court held that "the need for counsel must be made on a case-by-case basis in the exercise of sound discretion by the state authority charged with the responsibility for administering the. . . parole system." <u>Id.</u> at 790. Although the Court declined to adopt a "new inflexible Constitutional rule," it held that there is a presumptive right to counsel

> "in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself."

1    Id. at 790-91.

2         Although the Court emphasized that "considerable discretion

3    must be allowed the responsible agency in making the decision"

4    about whether to appoint counsel, Section 3044(a)(3) falls short

5    of the due process requirements set forth in Gagnon. For one thing,

6    § 3044(a)(3) limits the restricts the discretion of the responsible

7    agency, contrary to Gagnon's holding that the agency be given

8    "considerable" discretion.[3]

9         Second, Gagnon requires that a parolee be "informed of his

10   right to request counsel." Section 3044(a)(3) contains no such

11   requirement, and, read in conjunction with § 3044(a), parolees

12   would be deprived of the right to notice of the right to counsel

13   because it is not specifically mentioned in the statute.

14        Third, Gagnon provides for a presumptive right to counsel when

15   the parolee makes a colorable claim that he has not committed the

16   alleged violations or claims colorable mitigation. Section

17   3044(a)(3) precludes a right to counsel in such cases, unless the

18   parolee appears incapable of speaking effectively in his own

19   defense, given the complexity of the charges and defenses.

20   **ii. Whether the Injunction is necessary with respect to §**

21   **3044(a)(3)**

22        Having held that § 3044(a)(3) violates constitutional rights,

23

---

24        [3] It might be argued that the Injunction also restricts the
     discretion of the agency by requiring the appointment of counsel
25   for *all* parolees facing revocation. However, this restriction of
     the agency's discretion does not present the constitutional due
26   process problem that § 3044(a)(3) does.

1    the court turns to whether the relevant provisions in the

2    Injunction are necessary to remedy this violation. As noted above,

3    the court has substantial flexibility when ordering injunctive

4    measures to remedy constitutional violations, so long as the

5    measures are narrowly tailored, and address and relate to the

6    violation.

7        The Injunction requires appointment of counsel for all

8    parolees beginning at the Return to Custody Assessment ("RTCA")

9    stage of the parole revocation proceeding. Inj. ¶ 11(b)(I). While

10   this provision is in excess of what is required by the

11   Constitution, as interpreted in Gagnon, it may still be that, in

12   the context of California's parole revocation system, the provision

13   is necessary in order to ensure compliance with the Constitution.

14       In this case, plaintiffs argue that appointment of counsel to

15   all parolees at the RTCA stage is necessary because under

16   California's scheme, implementation of the Gagnon case-by-case

17   determination is impracticable. Plaintiffs assert, in declarations

18   and through other evidence, that case-by-case determination of who

19   was entitled to counsel under the Americans with Disabilities Act

20   caused long delays before probable cause hearings were held. For

21   example, plaintiffs' counsel heard from parolees who had been held

22   for more than 200 days without a hearing because of the backlog

23   created by case-by-case determinations for appointment of counsel.

24   See Huey Decl., Ex. W ¶76. Additionally, plaintiffs cite a 2003

25   Inspector General's report, which states "given the State's

26   inability to readily identify parolees eligible for Americans with

Disabilities Act accommodation, it is doubtful that the pre-revocation hearings can be conducted within mandatory time limits. On the contrary, adding another time-consuming procedure into an already cumbersome and convoluted process could cause significant additional delays." Huey Decl., Ex. H at 32.

Plaintiffs explain that the Injunction's provision of counsel for all parolees solved the problem of unconstitutionally long delays in the hearing process without creating another Constitutional violation of denying counsel to those entitled to it.

The court finds that ¶ 11(b)(I) of the Injunction is a properly tailored remedy, aimed at curing violations of due process rights articulated in <u>Gagnon</u>. The remedy addresses and relates to a Constitutional violation, specifically, Prop. 9's deprivation of a parolee's right to receive notice of his right to counsel, and deprivation of counsel for parolees who have colorable claims that they did not commit the alleged violation or of mitigation. The fact that the Injunction will have the collateral affect of providing counsel to parolees who might not be entitled to it under the minimum due process requirements does not render the injunction invalid. <u>See</u> <u>Brown v. Plata</u>, 131 S. Ct. at 1940.

**D. Section 3044(b)**

**ii. Whether § 3044(b) is unconstitutional**

Section 3044(b) provides:

The board is entrusted with the safety of victims and the public and shall make its determination fairly, independently, and without bias and shall not be influenced

1   by or weigh the state cost or burden associated with just
    decisions. The board must accordingly enjoy sufficient
2   autonomy to conduct unbiased hearings, and maintain an
    independent legal and administrative staff. The board shall
3   report to the Governor.

4       Previously, this court held that this section conflicted with

5   the Injunction because the Injunction, through the incorporated

6   Remedial Plan "provides that the defendants will utilize remedial

7   sanctions in lieu of initiating the parole revocation procedures

8   where appropriate." Valdivia 603 F.Supp. 1283. The court noted that

9   "the decision to refer a parolee to a remedial sanction program is

10  informed, at least in part, by the goal of reducing the custodial

11  burden on the state. . . Section 3044(b) appears to conflict with

12  this goal" because it strips the parole board of the right to take

13  into consideration the cost and burden of re-imprisonment of

14  parolees. Id.

15      Defendants insist that there is no conflict between the

16  statute and the injunction because neither the Injunction nor the

17  Remedial Plan addresses which factors the Board should consider in

18  deciding whether remedial sanctions are appropriate in any given

19  case. Defs.' Memo in Supp. of Mot. to Modify Injunction 9, ECF No.

20  1681. The court continues to conclude that § 3044(b) conflicts with

21  the stated goal of the Remedial Plan to reduce the number of prison

22  returns.

23      Additionally, § 3044(b) violates the Constitution. Morrisey

24  calls for a "neutral and detached" hearing body to make parole

25  revocation decisions. Morrissey at 489. See also

26  O'Bremski v. Maass, 915 F.2d 418, 423 (9th Cir. 1990)(The task of

1  parole board officials is "functionally comparable to those
2  performed by the judiciary.")

3      The court agrees with plaintiff that § 3044(b) violates
4  parolees right to a neutral decision-maker "by placing a thumb on
5  the scales of justice and tipping the balance towards
6  incarceration." Pls.' Opp'n to Mot. to Modify the Injunction 15,
7  ECF No. 1695. Under <u>Morrisey</u>, a neutral decision-maker is required
8  for determining both whether a parole violation has occurred, and
9  determining what will happen to the parolee after a violation has
10 been found. By entrusting the Board only with the safety of victims
11 and the public, § 3044 strips the Board of its duty to balance
12 those factors with a parolee's liberty interest, which is the duty
13 of neutral decision-maker in this context.

14      Moreover, the Supreme Court recently articulated a
15 Constitutional requirement with respect to California's prisons.
16 In <u>Brown v. Plata</u>, 131 S. Ct. 1910 (2011), the Court found that
17 severe overcrowding in California prisons is the primary cause of
18 persistent constitutional violations, "specifically the severe and
19 unlawful treatment of prisoners through grossly inadequate
20 provision of medical and mental health care." <u>Id.</u> at *4. The Court
21 affirmed a remedial order requiring California to reduce
22 overcrowding in its prisons in order to remedy the constitutional
23 violations. Although the injunction affirmed by the Court leaves
24 "the choice of means to reduce overcrowding to the discretion of
25 state officials," such as new construction or sending prisoners out
26 of state, the Court noted that the State was likely to be required

to reduce the overall prison population by up to 46,000 prisoners. Id. at *2-3. Section 3044's requirement that the parole board not take into consideration the cost and burdens to the state associated with re-incarceration of parole violators violates the requirement from Plata that California work towards reducing its prison population.

No provision currently in the Injunction explicitly remedies the constitutional violation created by § 3044(b), although the defendants remain bound by Morrisey's requirement for a neutral decisionmaker in probable cause and parole revocation hearings.

**E. Hearsay Evidence in Revocation Hearings**

**i. Whether Sections 3044(a)(5) and (a)(6) violate the Constitution**

In the March 2009 order, this court held that § 3044(a)(5) and (a)(6) could be construed in a way so as not to conflict with the Injunction.

Section 3044(a)(5) reads: "Parole revocation determinations shall be based upon a preponderance of evidence admitted at hearings *including* documentary evidence, direct testimony, or hearsay evidence offered by parole agents, peace officers, or a victim." The March 2009 order stated that this section could be reasonably construed "as setting forth a non-exhaustive list of evidence that may be relied on if it is admitted." Valdivia, 603 F.Supp.2d at 1283. Use of the word 'including' indicates that the list that follows is non-exhaustive, and that other types of evidence may be considered. The court now reconsiders its

21

conclusion that § 3044(a)(5) does not conflict with the Injunction. Because § 3044(a)(5) allows the use of unconditional hearsay evidence in parole revocation hearings, and the Injunction specifies that the use of hearsay is governed by applicable law, the court now concludes that there is a conflict.

Section 3044 (a)(6) reads: "Admission of the recorded or hearsay statement of a victim or percipient witness shall not be construed to create a right to confront the witness at the hearing." The March 2009 Order held that "section 3044(a)(6) may reasonably be read to provide that the admission of hearsay evidence against the parolee does not alone create a confrontation right. . . [but that] the admission of hearsay evidence itself is guided by the confrontation right." <u>Valdivia</u> 603 F.Supp.2d at 1284. In other words, hearsay is only admissible in the first place after weighing the confrontation right against other considerations.

Although the court did not, in the March 2009 Order, reach the question of whether 3044(a)(5) and (a)(6) violate the Constitution, the Ninth Circuit now directs the court do determine whether *any* provision of Prop. 9 violates the Constitution.

Section 3044(a)(5) allows the unconditional use of hearsay evidence in parole revocation hearings. <u>Morrissey</u> guaranteed parolees' "right to confront and cross-examine adverse witnesses at a revocation hearing, unless the government shows good cause for not producing the witnesses." <u>United States v. Comito</u>, 177 F.3d 1166, 1170 (9th Cir. 1999). "In determining whether the admission

of hearsay evidence violates the releasee's right to confrontation in a particular case, the court must weigh the releasee's interest in his constitutionally guaranteed right to confrontation against the Government's good cause for denying it." <u>Id.</u> Section 3044(a)(5) does not permit balancing of these interests. Accordingly, it violates the Constitution.

As to § 3044(a)(6), applying the principle that the court must construe a statute to avoid a constitutional infirmity so long as such construction is not 'plainly contrary' to the intent of the legislature, <u>Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg & Constr. Trades Council</u>, 485 U.S. 568, 575 (1988), the court now holds that §3044 (a)(6) does not violate the Constitution. As noted above, a reasonable construction of § 3044(a)(6) does not strip a parolee of his Constitutional confrontation right. It simply states that the introduction of hearsay evidence does not itself "create" a confrontation right.[4]

**ii. Whether the Injunction is necessary to remedy the violation**

Paragraph 24 of the Injunction provides: the use of hearsay evidence shall be limited by the parolee's confrontation rights in the manner set forth under controlling law as currently stated in <u>United States v. Comito</u>. . ."

Defendants do not, and could not argue that an injunctive

---

[4] This construction might give rise to the argument that the court has reduced § 3044(a)(6) to mere surplusage. Indeed, courts must be "reluctant to treat statutory terms as surplusage." <u>Duncan v. Walker</u>, 121 S. Ct. 2120, 2125 (2001). That reluctance is overcome, however, by the constitutional avoidance mandate articulated in <u>Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg & Constr. Trades Council</u>, 485 U.S. 568, 575 (1988).

1  measure that simply incorporates prevailing constitutional law is
2  beyond the scope of the court's discretion. The court concludes
3  that ¶ 24 of the Injunction is necessary to remedy the
4  constitutional violation created by § 3044(a)(5)'s allowance for
5  unconditional use of hearsay evidence.

6  **F. Whether § 3044 is Severable**

7       Having found that §§ 3044(a), 3044(a)(1), 3044(a)(2),
8  3044(a)(3), 3044(a)(5), and 3044(b) violate the Constitution, the
9  court turns to whether the statute may be severed, preserving the
10 non-offending provisions.

11      Federal courts apply state law governing severability when
12 determining whether a state statute is severable. <u>See, e.g.,</u>
13 <u>Brockett v. Spokane Arcades, Inc</u>., 472 U.S. 491, 506 (U.S. 1985).
14 Under California law, a state statute, including one passed by
15 initiative such as Prop. 9, is severable if the invalid provision
16 is "grammatically, functionally, and volitionally separable."
17 <u>Calfarm Ins. Co. v. Deukmejian</u>, 48 Cal. 3d 805, 821 (Cal. 1989).
18 <u>See also</u>, <u>Qwest Communs., Inc. v. City of Berkeley</u>, 433 F.3d 1253
19 (9th Cir. 2006) ("Under California law, the presence of a
20 severability clause coupled with the ability functionally,
21 mechanically, and grammatically to sever the invalid portion from
22 the valid portions of an enactment ordinarily will allow severance
23 but only if the remainder of the enactment is complete in itself
24 and would have been adopted without the invalid portion.").
25 "Partial invalidation [of a state statute] would be improper if it
26 were contrary to legislative intent in the sense that the

24

1   legislature had passed an inseverable Act or would not have passed

2   it had it known the challenged provision was invalid." Brockett v.

3   Spokane Arcades, Inc., 472 U.S. 491, 506 (U.S. 1985).

4        Proposition 9 does include a severability clause, which

5   provides:

6        "If any provision of this act, or part thereof, or the
         application thereof to any person or circumstance is for

7        any reason held to be invalid or unconstitutional, the
         remaining provisions which can be given effect without the

8        invalid or unconstitutional provision or application shall
         not be affected, but shall remain in full force and

9        effect."

10  November 4, 2008 Voter Information Guide ("Voter Information

11  Guide") § 8, Ex. 1 to Def.'s Request for Judicial Notice, ECF No.

12  1682. But such a clause is not dispositive; the court must look to

13  whether the invalid portions are "grammatically, functionally, and

14  volitionally separable" from what would remain.

15       If these provisions are severed, the only remaining text of

16  § 3044 would read:

17       (4) In the event the parolee's request for counsel, which
         shall be considered on a case-by-case basis, is denied, the

18       grounds for denial shall be stated succinctly in the
         record.

19       (6) Admission of the recorded or hearsay statement of a
         victim or percipient witness shall not be construed to

20       create a right to confront the witness at the hearing.

21  This text is not "complete in itself," and would certainly not have

22  been adopted by the voters on its own without the invalid portions.

23  Prop. 9, or  "the Victims' Bill of Rights Act" was passed by

24  California voters in order to "provide victims with rights to

25  justice and due process [and to] invoke the rights of families of

26  homicide  victims  to  be  spared  the  ordeal  of  prolonged  and

                                 25

1   unnecessary suffering, and to stop the waste of millions of

2   taxpayer dollars. . .." Voter Information Guide § 3. The remaining

3   text does not serve this, or any, purpose. Section § 3044(a), which

4   this court holds to be invalid, attempts to limit the procedural

5   rights to those listed in the sections that follow it. Without §

6   3044(a), which states "no person paroled from a California

7   correctional facility. . . shall. . . be entitled to procedural

8   rights other than the following..." the remaining text of § 3044

9   is meaningless. Accordingly, the invalid provisions are not

10  "volitionally" separate from the remaining portions, and no portion

11  of the statute can be preserved through severing.

## IV. Conclusion

13      For the foregoing reasons, the court ORDERS as follows:

14          [1] Defendant's Motion to Enforce Penal Code § 3044 and

15          to Modify the Permanent Injunction, ECF No. 1680, is

16          DENIED, except that Injunction ¶¶ 11(b)(iv)and 23 are

17          modified to reflect that defendants shall provide a

18          revocation hearing no later than the 45th calendar day

19          after the placement of the parole hold.

20          [2] Plaintiff's Motion to Enforce the Injunction, ECF

21          No. 1684, is GRANTED, except that the injunction is

22          modified as stated above.

23      IT IS SO ORDERED.

24      DATED: January 23, 2012.

25
                                LAWRENCE K. KARLTON
26                              SENIOR JUDGE
                                UNITED STATES DISTRICT COURT