UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JERRY VALDIVIA, ALFRED YANCY, and HOSSIE WELCH, on their own behalf and on behalf of the class of all persons similarly situated,

    Plaintiffs,

  v.

EDMUND G. BROWN, JR., Governor of the State of California, et al.,

    Defendants.
_____/

NO. CIV. S-94-671 LKK/GGH

O R D E R

Pending before the court is plaintiffs' motion for reconsideration of the court's July 2, 2013 order finding this case moot. (Plaintiffs' Motion for Reconsideration ("Motion"), ECF No. 1849; Order, July 2, 2013 ("July 2 Order"), ECF No. 1845.) The court previously took this motion under submission. Plaintiffs' arguments are considered in turn; for the reasons set forth below, their motion will be granted in part and denied in part.

**I. STANDARD**

    Plaintiffs seek reconsideration under Federal Rule of Civil

1

Procedure 60(b), subsections (1) and (6).

Rule 60(b)(1) allows for relief from an order for "mistake, inadvertence, surprise, or excusable neglect." Plaintiffs seek reconsideration on the basis of mistake. Errors of law may be corrected by the district court under this subsection. Liberty Mutual Ins. Co. v. EEOC, 691 F.2d 438, 441 (9th Cir. 1982).

Rule 60(b)(6) allows for relief from an order for "any other reason that justifies relief." Extraordinary circumstances are required to justify relief under this portion of the rule. See Ackermann v. U.S., 340 U.S. 193, 202 (1950) ("Neither the circumstances of petitioner nor his excuse for not appealing is so extraordinary as to bring him within . . . Rule 60(b)(6)."); see also 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 2857 (3d ed. 2013) ("'[E]xtraordinary circumstances' should only be required under catchall clause (6) of the rule.").

**II. ANALYSIS**

    **A. Alleged error in finding mootness**

Plaintiffs' central argument is that this court erroneously "re-defined" the parole revocation process as beginning only when a petition for parole revocation is filed with the state court, rather than when a parolee is detained for suspected parole violations. Plaintiffs argue that, as a matter of law, "the parole revocation process begins, for the purposes of constitutional analysis, when a parolee is arrested and incarcerated for allegedly violating parole." (Motion 6.) In support of their argument,

plaintiffs make much of the following sentence in the July 2 Order:

> [The California Department of Corrections and Rehabilitation's ("CDCR") Division of Adult Parole Operations ("DAPO")] initiates the parole revocation process by filing a petition with the state court, which must include "a written report that contains additional information regarding the petition, including the relevant terms and conditions of parole, the circumstances of the alleged underlying violation, the history and background of the parolee, and any recommendations." (Order 13.)

Plaintiffs assert that, "[i]n light of DAPO's continuing (even expanded) role in parole revocations, it was a mistake for this Court to find that 'parole revocation process' begins only after DAPO files a petition with the state courts." (Motion 7.)

To be clear, this court has never found, nor is it of the view, that the parole revocation process begins only when a parole revocation petition is filed with the state court. California Penal Code section 3000.08(f) provides, in pertinent part, that "[i]f the supervising parole agency has determined, following application of its assessment processes, that intermediate sanctions . . . are not appropriate, the supervising parole agency shall . . . petition [the appropriate state court] **to revoke parole**" (emphasis added). It was in reference to the text of this provision that the court used the phrase "initiates the parole revocation process" in the sentence, quoted above, that is relied upon by plaintiffs as evidence of this court's purported error.

It is of course well-settled that, as a matter of law, an individual is constitutionally entitled to due process protections from the moment that he or she is arrested on a suspected parole

violation. See Morrissey v. Brewer, 408 U.S. 471, 485 (1972) ("In analyzing what [process] is due, we see two important stages in the typical process of parole revocation . . . The first stage occurs when the parolee is arrested and detained . . . The second occurs when parole is formally revoked.").

But, as discussed at length in the July 2 Order, California has, in enacting Realignment, created a new system for handling both stages of the parole revocation process. Any Constitutional infirmities must be addressed by considering the new system's functioning as an organic whole. The fact that the Valdivia defendants play significant roles in the post-Realignment system is insufficient to justify the court's continued exercise of jurisdiction over the defendants, as plaintiffs desire.

Plaintiffs point to the fact that, under section 3000.08, "a parolee may waive, in writing, his or her right to counsel, admit the parole violation, waive a court hearing, and accept [a] proposed parole modification or revocation" prior to the filing of a revocation petition with the state court. (Motion 7.) Plaintiffs contend that the ability "to present 'screening offers' and to take uncontested waivers of rights *prior* to the filing of any petition with the state court . . . was a central feature of the system that existed prior to the Valdivia Injunction." (Motion 7.) That may very well be true. Nevertheless, California must be given an opportunity to operate its "Realigned" parole revocation system without premature interference by federal courts. If, in practice, it turns out that CDCR, the state courts, and parolees' defense

4

attorneys prove incapable of safeguarding the due process rights of suspected parole violators at any stage in this new system, then the system may again be challenged as unconstitutional. But to implement the remedy proposed by plaintiffs — the establishment of an eight-month-long "transition period," in which DAPO is required to provide parolees with notices of charges and rights within 3 days, and to file violation petitions with state courts within 7 days, and in which monitoring by the parties and the Special Master will be ongoing for at least the first six months — is to presume *ex ante* that the "Realigned" parole revocation system will fail to provide parolees with due process safeguards absent significant judicial intervention. The court declines to make such a presumption. Plaintiffs' motion on this ground is therefore denied.

### B. Persons arrested before July 1, 2013 for alleged parole violations

Plaintiffs argue that the injunctive relief previously ordered in this matter ("Valdivia Injunction") ought to remain in effect for those alleged parole violators who were arrested prior to July 1, 2013, but whose revocation hearings have not yet been adjudicated by the Board of Parole Hearings ("BPH"). Plaintiffs are also correct that defendants's opposition includes "no evidence that the hearings scheduled for the days up to and including July 26 [*i.e.*, the date on which defendants earlier stated that the last parole revocation hearing was scheduled to occur] actually happened, and no evidence concerning the number of pre-July 1 arrestees still in custody but unrevoked." (Reply 8.) The court

agrees that <u>Valdivia</u> is not moot as to these individuals, and will modify its July 2 Order accordingly.

However, the court declines to go as far as to order that the <u>Valdivia</u> Injunction be maintained "until the last of the pre-July 1, 2013 [*sic*] has been released from any custody imposed as a result of the parolees arrested pre-July 1 parole violation charges." (Motion 18.) Plaintiffs' counsel argues that their ethical obligation to parolees in custody "persist until every parolee is released at the end of his or her revocation term." (Reply 9.) According to plaintiffs' counsel, they have "notified Defendants of overdetention problems in County Jails in recent weeks and months. Dismissing the case now would remove that avenue of recourse for the thousands of parolees now in custody, serving revocation terms which may last beyond the end of 2013." (Id.) In support, plaintiffs cite to their objections to the Special Master's Thirteenth Report, in which they detailed several instances in which parolees were erroneously detained beyond their scheduled release dates in Alameda, Contra Costa, Fresno, Los Angeles, and San Mateo counties. (Id.)

The court is nevertheless unconvinced that the <u>Valdivia</u> Injunction must be maintained until the last of the parolees arrested before July 1, 2013 is released from custody, rather than until their alleged parole violations have been disposed of. As defendants argue, "Plaintiffs also fail to explain which provisions of the Injunction would even apply to parolees serving revocation terms as a result of a pre-July 1, 2013 arrest. Indeed, none of the

provisions apply. All charges against these parolees have been adjudicated." (Opposition 7.) The principal concern articulated by plaintiffs in their objections to the Special Master's Thirteenth Report are failures of information systems and of interagency communications. It is unclear to the court that maintaining the Injunction in place would remedy these failures, rather than having the opposite effect: increasing errors as the state[1] is forced to keep Valdivia-mandated procedures in place for one group of inmates (parolees detained prior to July 1) while implementing new procedures for those parolees detained after July 1.

Accordingly, the Valdivia Injunction need only remain in effect until the cases of all persons arrested prior to July 1, 2013 for suspected parole violations are disposed of, whether through revocation hearings, release, or other disposition; it need not remain in effect until all of these persons have been released from custody.

**C. Notice to Valdivia class members**

Plaintiffs next raise the issue of notice of termination of this action to the Valdivia class members, writing:

> Plaintiffs have come to rely on the Valdivia Injunction as a safeguard against overreaching by the State, and to expect that they can report due process violations to counsel, and obtain some measure of relief (*e.g.*[,] through the Paragraph 27 process for reporting individual violations of the Injunction). Dismissing the case without notice to the Plaintiff class — who will otherwise experience no change in their everyday circumstances to alert them that the case has ended —

---

[1] Not to mention the individual California counties, which are not parties to this lawsuit.

7

would foil those expectations and be ill-suited to the legacy of this case. Without notice that <u>Valdivia</u> has been terminated, individual class members risk losing their claims for individual due process violations when the limitations period on those claims expire. [*citation to plaintiff's motion*] At present, class members rely on <u>Valdivia</u> to vindicate their due process rights. [*citation to plaintiff's motion*] Defendants argue that this risk is insignificant, because the superior courts can hear individual due process claims, [*citation to defendant's opposition*] But again, the vast majority of parolees will never encounter the superior courts under Realignment — their cases will be resolved during the pre-petition stages of the parole revocation process — with no court involvement. And Defendants' analogy ignores the fact that the <u>Valdivia</u> Injunction's remedies exist apart from, and in addition to, the opportunity to raise objections during parole proceedings. Class members should be told that those remedies no longer exist, and that their only recourse for violations of their rights prepetition is to file an individual civil suit or petition for habeas corpus. (Reply 12-13.)

Plaintiffs "request that the court stay final judgment in this matter to allow for a notice and comment period under Rule 23(d)(1)(B), direct the parties to submit a stipulated proposed form of notice, and establish a schedule for the Court to receive objections and to hold a fairness hearing before any final judgment issues." (Motion 22.)

    The court sees no reason to receive objections and hold a fairness hearing as to the propriety of decertification of the <u>Valdivia</u> class and termination of this action. The mootness of this case is settled as a matter of law. Consequently, any objections that plaintiffs may raise at a fairness hearing are simply beside the point. As defendants point out, "There are no individual, factual issues that bear on the question of mootness." (Opposition 16.)

Nevertheless, plaintiffs are correct as to the importance and appropriateness of providing notice of termination to the plaintiff class. Rule 23(d) permits the court to issue orders that "require — to protect class members and fairly conduct the action — giving appropriate notice to some or all class members of . . . any step in the action." Fed. R. Civ. P. 23(d)(1)(B)(ii).

Plaintiffs argue that the costs of any notice should be assigned to defendants, writing:

> Plaintiffs are a largely indigent class of 60,000 parolees in custody and not in custody, scattered throughout the state of California. Their positions were vindicated in this lawsuit in [myriad ways], and Defendants have the means to finance a relatively modest means of notice . . . . Assigning the cost of notice to Defendants also promotes efficiency. Defendants keep information concerning the location of all parolee[s] in centralized databases; Plaintiffs' counsel does not. For the roughly 8% of the Plaintiff class with pending revocation charges . . . Defendants have the ability to personally serving [*sic*] on parolees in the "notice" stage of the revocation process, which Plaintiffs' counsel lacks. The remainder of the class is supervised by defendant DAPO on parole and can receive notice by posting in parole offices and by communication (mail or in person) with their parole agents . . . [Plaintiff's] counsel stands to lose access to their clients once the case is dismissed. Many County Jails, for example, restrict legal visits to a parolee's current counsel. (Reply 14.)

Defendants disagree, citing <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156 (1974) (finding that district court erred in dividing costs of notice of class certification between the parties) for the proposition that "the responsibility and cost for [providing notice] should be borne by Plaintiffs." (Opposition 16.) <u>Eisen</u> is easily distinguished, however, because it concerned the question of which side should pay for the costs of notifying potential class

9

members of class certification, a question the Supreme Court found to be unambiguously decided by the text of Rule 23. The issue presently before this court is who should bear the costs of notifying the class of Valdivia's dismissal on mootness grounds.

In deciding this question, the court is also guided by California Rule of Professional Conduct 3-500: "A member shall keep a client reasonably informed about significant developments relating to the employment or representation, including promptly complying with reasonable requests for information and copies of significant documents when necessary to keep the client so informed." Class counsel bears an ethical responsibility to notify the Valdivia class members of the action's dismissal.

In light of the foregoing, it appears that the best course of action is to require the parties to share the costs of notice, in the manner set forth in the court's order below.

**D. Alleged error in taking evidence**

Plaintiffs argue that the court erred in taking testimony from BPH's Executive Officer regarding how the state intends to handle parole supervision and revocation for those inmates who will be released from prison pursuant to the order of the Three Judge Court in Coleman v. Brown, No. 2:90-cv-0520-LKK-JFM (E.D. Cal.) and Plata v. Brown, No. 3:01-01351-TEH (N.D. Cal.). Plaintiffs argue that "[a]llowing for an eight-month transition period would relieve the parties and the Court from relying on predictions about how this new group of parolees will be handled, and will allow the Court to tailor relief as necessary in the event that these parolees are put

10

1  through administrative rather than judicial revocation processes."
2  (Motion 18)

3  As explained above, the court declines to maintain the
4  <u>Valdivia</u> Injunction as a prophylactic remedy, for to do so would
5  be to presume the constitutional unfitness of California's new
6  parole system. The court is even less willing to maintain the
7  Injunction in place based on the possibility that prisoners subject
8  to early release might be placed solely under defendants'
9  administrative supervision. Any Constitutional infirmities in the
10 handling of parole for these inmates will have to be addressed in
11 a separate proceeding.

12 Accordingly, plaintiffs' motion for reconsideration on this
13 ground is denied.

14 **E. Abstention**

15 Plaintiffs argue at length that the court "misapprehended" the
16 abstention doctrine set forth in <u>Younger v. Harris</u>, 401 U.S. 37
17 (1971) and its progeny, and argue for reconsideration on the
18 grounds that abstention doctrines do not provide a basis for
19 dismissal herein.

20 In so arguing, plaintiffs misconstrue the substance of the
21 court's July 2 Order. Abstention was not the basis for dismissal;
22 mootness was. The sole paragraph in the order to reference
23 abstention provided that "[a]bstention from unwarranted
24 interference with state court proceedings is a well-settled
25 principle," and concluded, "For this court to, *e.g.*, require
26 defendants to maintain the current system for providing parolees

with probable cause hearings (including, as plaintiffs request, 'the BPH system of hearing officers and the provision of counsel through CalPAP') would certainly interfere with the system of due process review envisioned by the state." (July 2 Order 24-25.) In making their argument, plaintiffs have significantly misconstrued a passing observation (that dismissal of this case is supported by abstention/federalism principles) for a legal justification (that dismissal is required under Younger abstention). Mootness is a sufficient basis for dismissal, and that determination would be undisturbed by a full-blown Younger analysis. Reconsideration on these grounds is therefore denied.

**III. CONCLUSION**

The court hereby orders as follows:

    [1] Defendants are DIRECTED to maintain the injunctive relief previously ordered in this matter in place for those alleged parole violators who were arrested prior to July 1, 2013, but whose alleged parole violations have not yet been addressed by defendants. Defendants are FURTHER DIRECTED to file a declaration no later than October 1, 2013 apprising the court as to the status of these alleged parole violators' cases, and to continue doing so on the first of each month thereafter, until all of the outstanding cases have been disposed of. Thereafter, the court will resolve the outstanding motions for fees and costs, decertify the class, and dismiss this case.

    [2] Plaintiffs' counsel and defendants are to provide

notice of dismissal of this action to class members, using the following procedures:

    1. The parties are to agree on the form of notice.

    2. Defendants will provide plaintiffs' counsel with the last known mailing address for each individual in the plaintiff class, whether incarcerated or not, in an electronic form conducive to the printing of mailing address labels. Defendants will bear the costs of collecting this information and providing it to plaintiffs' counsel.

    3. Plaintiffs' counsel will mail a copy of the agreed-upon notice to each class member, using the address provided by defendants. Plaintiffs' counsel will bear the costs of printing and mailing these notices.

    4. Defendants will cause large, easily-readable copies of the agreed-upon notice to be placed in easily-visible locations in every parole office in the state. Defendants will bear the costs of printing these notices and causing them to be posted.

The parties are DIRECTED to complete the steps above no later than thirty (30) days after entry of this order.

[3] Plaintiff's request for reconsideration of the court's prior order finding this case moot is DENIED in all other respects.

////

1    IT IS SO ORDERED.

2    DATED: September 10, 2013.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

14